**AFFIRM; and Opinion Filed January 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01576-CV

**JUDITH KAREN BESHEARS, Appellant**
**V.**
**DONALD BESHEARS, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-52873-98**

## OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

Donald Beshears (Donald)[1] filed a motion to vacate or, alternatively, modify a qualified domestic relations order (QDRO) signed by the trial court following his divorce from Judith Karen Beshears (Judith) on the ground the QDRO did not comport with the divorce decree. During trial, Judith orally requested the trial court remove a provision from the QDRO that required her benefit to be calculated as of November 8, 2001, the date the divorce proceedings were heard by the trial court. In three issues, Judith contends the trial court erred by denying her motion and by granting relief sought in Donald's motion and that the evidence is factually insufficient to support several of the trial court's findings of fact and conclusions of law. We affirm the trial court's order.

---

[1] Because the parties have the same surname, we refer to them by their first names for clarity.

## Background

Judith and Donald were married on July 20, 1977. On June 12, 1978, Donald began working for Merck & Co., Inc. (Merck) and participated in a retirement plan offered by Merck. In October 1998, Judith filed for divorce. On November 8, 2001, the trial court heard evidence pertaining to the divorce. On February 5, 2002, the trial court signed a Final Decree of Divorce finding "the parties have reached an agreement as to a proposed division of the marital estate," the agreement was a just and right division of the marital estate, and the marital estate was divided pursuant to the agreement.

As to Donald's retirement benefits, the divorce decree provided:

> IT IS ORDERED AND DECREED that JUDITH BESHEARS is AWARDED, as her sole and separate property, a portion of DONALD BESHEARS' retirement benefits in the Retirement Plan for the Salaried Employees of Merck & Co., Inc., arising out of DONALD BESHEARS' employment with Merck & Co., Inc., that portion being 57.5% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to the Retirement Plan for the Salaried Employees of Merck & Co., Inc., and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed.

> IT IS ORDERED AND DECREED and DONALD BESHEARS is AWARDED, as his sole and separate property, the remainder of DONALD BESHEARS' retirement benefits in the Retirement Plan for the Salaried Employees of Merck & Co., Inc., arising out of his employment with Merck & Co., Inc.

On February 5, 2002, the trial court also signed a QDRO pertaining to the Retirement Plan for the Salaried Employees of Merck & Co., Inc. (the 2002 QDRO). The 2002 QDRO identified Donald as the participant in the retirement plan and Judith as the alternate payee of the plan. The 2002 QDRO provided, in relevant part:

> [Judith] is allocated and assigned 57.5% of [Donald's] benefit accrued under the Plan as of November 8, 2001.

> [Judith's] benefits shall be payable over [Judith's] lifetime.

–2–

[Judith] shall be treated as the surviving spouse of [Donald], notwithstanding [Donald's] subsequent marriage, if any.

Neither Judith nor Donald appealed the divorce decree or the 2002 QDRO.

Donald continued to work for Merck following the divorce. When Donald approached retirement, he learned from Merck that, because Judith was named as his surviving spouse in the 2002 QDRO, he was required to choose an annuity option that provided for Judith to receive a benefit after his death. The cost of the survivor benefit reduced the monthly benefit Donald would otherwise receive. Donald also could not name his current spouse as his surviving spouse for purposes of receiving a benefit after his death.

On January 18, 2012, Donald filed a motion to vacate and void the 2002 QDRO or, in the alternative, modify the 2002 QDRO, on the ground it did not comport with the terms of the decree. Donald specifically complained that, pursuant to section 205 of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461 (West 2008, 2009, & Supp. 2013) (ERISA), there are two types of survivor annuities, a Qualified Preretirement Survivor Annuity (QPSA) and a Qualified Joint and Survivor Annuity (QJSA). Donald asserted the award of a QJSA to Judith in the 2002 QDRO did not comport with the property division in the decree.[2]

Judith filed a plea to the jurisdiction, asserting the 2002 QDRO was a final order, the trial court's plenary power over the 2002 QDRO had expired, and the trial court lacked jurisdiction to modify the 2002 QDRO. Judith filed a motion to dismiss raising the same arguments.

After hearing argument from counsel, the trial court denied Judith's plea to the jurisdiction. Judith's counsel then orally requested the trial court modify the 2002 QDRO to remove the provision that required Judith's portion of the retirement benefit to be calculated based on the value of the total benefit as of November 8, 2001 and to award her 57.5% of the

_____

[2] Donald did not contest the award of a QPSA to Judith, and we do not address on appeal whether the 2002 QDRO properly awarded Judith a QPSA.

–3–

total benefit at the time of Donald's retirement. Judith's counsel also requested that, to the extent the survivorship benefit was divisible, the 2002 QDRO be modified to award Judith 57.5% of the QJSA.

Donald called Philip Phillips, an attorney whose practice encompasses the preparation of QDROs, to testify as an expert witness on QDROs. Phillips testified he has prepared over 9,000 QDROs for other attorneys and, in addition, has prepared QDROs in his own cases.

According to Phillips, the Merck plan is a defined benefit plan and is governed by ERISA. The 2002 QDRO names Judith as Donald's "surviving spouse." The Merck retirement plan has two different types of survivor annuities. The QPSA applies if the participant in the plan dies prior to anyone beginning to receive a retirement benefit. The QPSA allows a preretirement qualifying spouse to receive her portion of the benefit and not be "cut off" by the participant's death. The QJSA operates post-retirement and governs entitlement to benefits in the circumstance where the participant dies after the parties start receiving benefits.

Phillips testified there are "separate interest" and "shared benefit" QDROs. In a separate interest QDRO, the alternate payee's benefit is converted to her lifetime. This means the death of the participant has no effect on the alternate payee's receipt of her benefit. The alternate payee continues to receive her benefit until her death. In a shared benefit QDRO, the participant and the alternate payee share the benefit. The alternate payee starts receiving her benefit when the participant retires and receives that benefit until the participant dies. In a shared benefit QDRO, the alternate payee will not receive a benefit after the participant's death unless she has a QJSA.

The 2002 QDRO specifically states that Judith will receive a benefit for her lifetime and is a separate interest QDRO. This means the retirement plan will "carve out" Judith's portion of the retirement benefit and then will actuarially adjust the benefit based on when Judith begins to

receive it and her life expectancy. Judith needed a QPSA to protect her interest in the retirement benefit in the event Donald died before he began receiving a retirement benefit. However, because the 2002 QDRO is a separate interest QDRO, she did not need a QJSA to protect her interest.

In Phillips's opinion, providing for a QJSA in a separate interest QDRO allows the alternate payee to "double dip." It allows the alternate payee to receive her benefit during her lifetime but, if the participant dies, the alternate payee will also receive an annuity based on the participant's portion. The alternate payee is then collecting one hundred percent of the benefits. This gives the alternate payee the participant's post-divorce property. Unless the parties specifically agree to a QJSA or it is specifically provided for in the divorce decree, Phillips does not draft a separate interest QDRO to include a QJSA.

Phillips testified the 2002 QDRO gives Judith a QJSA. This has affected Donald's retirement options because, due to the QJSA, he is not allowed to take a lump sum out of his retirement account. Further, Donald's monthly annuity is reduced to pay for the extra benefit of the QJSA to Judith. Finally, by awarding all the survivor benefits to Judith, Donald is unable to leave any survivor benefit to his current wife. In Phillips's opinion, the 2002 QDRO awarded Judith some of Donald's separate property.

Phillips testified that the purpose of a QDRO is to more specifically define what was awarded, not to add to the award. In Phillips's opinion, in order for an alternate payee to be awarded survivorship benefits in a separate interest QDRO, the award should be included in the divorce decree or "it should at least be reasonable to interpret it being in the decree." According to Phillips, the Merck retirement plan defines the QJSA as a separate benefit. The divorce decree does not mention a survivor annuity and awarded Donald all benefits in the retirement plan not awarded to Judith. If Donald was to die first, and Judith gets all his benefits as a result of the

QJSA, the residuary award in the decree is meaningless. In Phillips's opinion, there is "no question" that the inclusion in the 2002 QDRO of the QJSA increased the amount of property that Judith was awarded.

Phillips testified the 2002 QDRO divided the retirement benefit as of November 2001. Although the decree does not specifically state the benefit is to be divided as of November 8, 2001, he believes it is implied in the decree. Whether the divorce decree conflicts with the QDRO, as to the date the benefit was to be divided, depends on the court's interpretation of the decree.

Judith called Donald as a witness. Donald testified he retired from Merck effective January 1, 2011. The only funds he had withdrawn from his retirement accounts at Merck were from his 401(k) account. Judith testified that she and Donald have an adult disabled son. Since the divorce, Donald has filed several petitions against her and dismissed them before trial. Donald ultimately obtained a ruling from a court in Arkansas decreasing the amount of support he was paying for their son and capping the support at two years.[3]

The trial court granted the relief sought in Donald's motion and signed an amended QDRO stating that Judith "shall not be treated as the surviving spouse of [Donald] except with regard to the Qualified Preretirement Survivor Annuity to the extent of [Judith's] awarded benefits." The trial court denied Judith's oral motion to amend the QDRO. At Judith's request, the trial court made Findings of Fact and Conclusions of Law. As relevant to this appeal, the trial court found (1) in the decree, Judith was awarded 57.5% of Donald's retirement plan benefit as a result of his employment with Merck from the date of marriage until November 8, 2001; (2) the decree did not award Judith any of the survivor benefits; (3) the 2002 QDRO included an incorrect award of survivor benefits to Judith; (4) the 2002 QDRO did not comport with the

_____
[3] Judith and the parties' son now reside in Arkansas.

decree because it awarded survivor benefits to Judith that were not awarded in the decree; (5) Donald did not contest the award of the QPSA to Judith; (6) the QJSA "is an additional survivor benefit to a separate interest" QDRO; (7) the 2002 QDRO is a separate interest QDRO and the administrator for the Merck retirement plan determined the QJSA to be an additional benefit; (8) the court *sua sponte* considered Judith's request to change the November 8, 2001 division date in the QDRO; (9) the date in the QDRO was the date the parties agreed to divide the retirement plan benefit and there was no evidence to support Judith's request; and (10) Judith did not file a written pleading supporting her request. The trial court concluded it "was without subject matter jurisdiction to enter the [2002] QDRO that awarded [Judith] survivor benefits that she was not awarded in the decree," the 2002 QDRO should be amended regarding the designation of Judith as Donald's surviving spouse, and the 2002 QDRO should not be amended to change the date of division.

## Standard of Review

We review the trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree for an abuse of discretion. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *see also In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (most appealable issues in family law cases are evaluated for abuse of discretion). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re A.B.P.*, 291 S.W.3d at 95.

A trial court's findings are reviewable for sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). As applicable to this case, in a factual sufficiency review, we examine all the evidence in the record, both supporting and

contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *In re C.A.S.*, 405 S.W.3d 373, 382–83 (Tex. App.—Dallas 2013, no pet.).

In family law cases, sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its application of that discretion. *Moroch*, 174 S.W.3d at 857. We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.*; *see also In re C.A.S.*, 405 S.W.3d at 383.

### Analysis

In her first two issues, Judith contends the trial court erred by amending the 2002 QDRO to name her as Donald's surviving spouse solely for purposes of the QPSA and by denying her request to amend the QDRO to remove a provision that required her benefit to be calculated as of November 8, 2001, the date the divorce proceedings were heard by the trial court. In her third issue, Judith asserts the evidence is factually insufficient to support the trial court's findings that (1) Judith was awarded 57.5% of Donald's retirement plan benefit from the date of marriage until November 8, 2001; (2) the decree did not award Judith any survivor benefits; (3) November 8, 2001 was the date the parties agreed to divide the retirement plan benefit; and (4) Judith lacked a written pleading to support her request to amend the 2002 QDRO.

–8–

*Applicable Law*

An agreed property division, although incorporated into a final divorce decree, is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *In re R.F.G.*, 282 S.W.3d 722, 725 (Tex. App.—Dallas 2009, no pet.). Our primary concern in interpreting a contract is to ascertain the true intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2012); *In re R.F.G.*, 282 S.W.3d at 725. We construe the decree as a whole to harmonize and give effect to the entire decree. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If, when read as a whole, the divorce decree's terms are unambiguous, we must give effect to the order in light of the literal language used. *Id.*; *In re C.P.Y.*, 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.). However, if the decree's terms are ambiguous, we must review the record along with the decree to aid in interpreting the judgment. *Coker*, 650 S.W.2d at 393; *In re R.F.G.*, 282 S.W.3d at 725. A contract is ambiguous if its meaning is uncertain or it is reasonably susceptible to more than one interpretation. *Coker*, 650 S.W.2d at 393; *see also Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *In re R.F.G.*, 282 S.W.3d at 725. Whether a divorce decree is ambiguous is a question of law we review de novo. *Coker*, 650 S.W.2d at 394; *see also Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

The type of order in question here, a QDRO, is a species of post-divorce enforcement order. *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Shanks*, 110 S.W.3d at 449). The purpose of a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan. *Quijano v. Quijano*, 347 S.W.3d 345, 353–54 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also* 29 U.S.C. § 1056(d)(3)(B)(i). A QDRO is a final, appealable order. *See Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003) (post-

–9–

divorce QDRO reviewed by appeal); *McCaig v. McCaig*, No. 12-06-00374-CV, 2007 WL 1765845, at *3 (Tex. App.—Tyler June 20, 2007, pet. denied) (mem. op.). "Res judicata applies to final divorce decrees and, under the same logic, applies to final post-divorce orders." *Gainous*, 219 S.W.3d at 105; *see also Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990) (applying res judicata to a divorce decree). But an attack on a QDRO is not barred by res judicata if it is shown that the QDRO is void. *Gainous*, 219 S.W.3d at 105. A QDRO is void if the trial court lacked jurisdiction over the parties, the subject matter, or to enter the judgment, or if it lacked capacity to act as a court. *Id.* The party challenging the QDRO has the burden to establish the QDRO is void. *Gainous*, 219 S.W.3d at 106; *see also Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (party bringing collateral attack must show judgment is void).

A trial court that renders a divorce decree generally retains the power to enforce or clarify the property division made or approved in the decree. Tex. Fam. Code Ann. §§ 9.002, 9.006(a), 9.008 (West 2006 & Supp. 2013). The court may enter a clarifying order to enforce compliance with the original division of the property. *Id.* § 9.008(b); *see also* § 9.1045(a) (West 2006) (providing that a "court that renders a qualified domestic relations order retains continuing, exclusive jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court"). However, after its plenary power expires, a court may not alter, amend, or modify the substantive division of property in the decree. *Id.* § 9.007(a), (b) (West 2006); *Shanks*, 110 S.W.3d at 449; *Quijano*, 347 S.W.3d at 353. An order that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce is beyond the jurisdiction of the trial court and is void. Tex. Fam. Code Ann. § 9.007(b); *DeGroot v. DeGroot*, 260 S.W.3d 658, 663 (Tex. App.—Dallas 2008, no pet.); *see also Joyner v. Joyner*, 352 S.W.3d 746, 749 (Tex. App.—San

Antonio 2011, no pet.) (noting issue of jurisdiction turned on whether order modified or clarified the domestic relations order).

*Date Limitation in 2002 QDRO*

Judith first argues the trial court erred by denying her oral request to amend the QDRO to remove the provision requiring her benefit to be calculated as of November 8, 2001. Judith contends the 2002 QDRO modifies the substantive division of property in the divorce decree because the literal language of the decree does not contain a date limitation. Judith asserts she is, therefore, entitled to 57.5% of the entire retirement benefit as of the date of Donald's retirement, including sums accumulated in the retirement account post-divorce.

Neither Donald nor Judith testified about their agreement on the property division. Phillips testified the November 8, 2001 date in the 2002 QDRO was not specifically stated in the decree, but was implied. The trial court took judicial notice of the case file, including the divorce decree. The divorce decree awarded Judith "57.5% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to" Donald's retirement plan.

Judith argues the supreme court, in interpreting provisions similar to the one in the decree in this case, has concluded the property division unambiguously entitled the recipient to an interest in all sums received under a retirement plan rather than an interest in the benefits existing as of the date of the divorce. *See Reiss*, 118 S.W.3d at 441–42; *Shanks*, 110 S.W.3d at 445, 448; *see also McCaig*, 2007 WL 1765845, at *1–2. However, the language awarding the benefit in the retirement plan to Judith cannot be read in isolation. Rather, we must construe the decree as a whole to harmonize and give effect to the entire decree. *Coker*, 650 S.W.2d at 393.

Paragraph twelve of the decree, which dealt with the property division, is entitled "Division of Marital Estate." The decree provides that Judith and Donald reached an agreement

–11–

as to the proposed division of the "marital estate." The trial court also stated in the decree it was dividing the "marital estate." With regard to property, other than the retirement account, divided in paragraph twelve of the decree, the trial court stated it was dividing property "accumulated by either party during the marriage relationship" and that had "accrued during the marriage." The decree also stated the trial court was dividing the parties' debts "as a part of the division of the estate of the parties."

In *Pearson v. Fillingim*, 332 S.W.3d 361 (Tex. 2011) (per curiam), the parties were married for eleven years. During the marriage, the husband's parents conveyed to the husband four deeds for mineral rights. *Id.* at 362. The wife subsequently initiated divorce proceedings. *Id.* The divorce decree signed by the trial court stated "the estate of the parties" was "divided as follows" and divided property in the community estate into two schedules. *Id.* The schedules did not include the mineral rights, but included residuary clauses awarding both parties a "one-half interest in all other property or assets not otherwise disposed of or divided herein." *Id.* Both parties received mineral royalties following the divorce. *Id.* Twenty-five years after the divorce, the husband sought to clarify the divorce decree with respect to the mineral rights, asserting the rights were gifts to him from his parents. *Id.* The trial court determined the mineral rights were the husband's separate property. *Id.*

The supreme court addressed whether the trial court had jurisdiction to clarify the decree regarding whether the mineral rights were the husband's separate property. *Id.* at 363. It concluded the phrase "the estate of the parties" used in the divorce decree encompassed the community property of the parties, but did not reach separate property. *Id.* However, because the husband failed to establish prior to the signing of the decree that the property was separate property, the mineral deeds were presumed to be community property and were divided by the residuary clauses. *Id.*

The decree in this case repeatedly referenced the "marital estate," the "estate of the parties," and property acquired during the marriage. Accordingly, the decree, when read as a whole, unambiguously divided only the community estate and did not award Judith any of Donald's post-divorce separate property accumulated in the retirement account. *See id.*[4] Accordingly, the trial court did not abuse its discretion by denying Judith's oral request that the 2002 QDRO be amended to remove the November 8, 2001 date and to award her 57.5% of the retirement benefit as of the date of Donald's retirement.[5]

*QJSA*

Judith next complains the trial court erred by granting Donald's motion and amending the 2002 QDRO to state Judith was Donald's surviving spouse only for purposes of the QPSA. Judith specifically contends Donald failed to meet his burden of establishing the 2002 QDRO did not comport with the decree and that any QDRO that does not award her at least 57.5% of the surviving spouse benefit does not comport with the decree and is void.

We construe Judith's argument to be the QJSA was included in her award of "57.5% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to" Donald's retirement plan. However, the divorce decree does not specifically mention surviving spouse benefits. We conclude the divorce decree is ambiguous regarding the award of survivor benefits.

---

[4] Relying on the Texas supreme court's opinions in *Shanks* and *Reiss* and the Tyler court of appeals's opinion in *McCaig*, Judith argues the divorce decree unambiguously awarded her 57.5% of the entire retirement benefit at the time of Donald's retirement. However, *Shanks* and *McCaig* interpreted only a provision in the divorce decree under consideration that divided the retirement benefit. *See Shanks*, 110 S.W.3d at 445; *McCaig*, 2007 WL 176584, at *1. Neither opinion indicates the decree under consideration included the words "marital estate," "estate of the parties," or "community property" or that, in construing the applicable decree in its entirety, there was any other provision impacting the division of the retirement benefit. In *Reiss*, the supreme court addressed a provision of the decree dividing "community property." *Reiss*, 118 S.W.3d at 440. However, the term "community property" was not used in the provision dividing the retirement benefit, and that provision divided the benefit "if and when" it was received by the husband. *Id.* A divided court determined that, while the provision may have impermissibly classified separate property as community property, it awarded the wife a percentage of the retirement benefit as of the time of the husband's retirement. *Id.* at 441–42. The divorce decree is this case does not divide the retirement benefit "if and when received" by Donald. Rather, in a section of the decree dealing only with the division of the marital estate, it awarded Judith 57.5% of the retirement benefit. Reading the decree as a whole, we cannot conclude it divided Donald's separate property by awarding Judith 57.5% of the entire retirement benefit as of the time of Donald's retirement. *See Pearson*, 332 S.W.3d at 363.

[5] Based on this conclusion, we need not address Judith's complaints pertaining to the factual sufficiency of the evidence to support the trial court's findings relating to either the division of the retirement benefit as of November 8, 2001 or to whether there was a written pleading to support Judith's request to amend the QDRO. *See* TEX. R. APP. P. 47.1.

–13–

Accordingly, we review both the decree and the record to aid us in interpreting the judgment. *Coker*, 650 S.W.2d at 393.

In *Hicks v. Hicks*, 348 S.W.3d 281 (Tex. App.—Houston [14th Dist.] 2011, no pet.), the divorce decree awarded the wife fifty percent "of the community sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of" the husband's service in the military. The trial court signed a domestic relations order that set out a formula for calculating the wife's benefit. *Id.* at 285. The husband appealed complaining, among other issues, that the domestic relations order was inconsistent with the decree because it provided the wife "shall be deemed to be the beneficiary of the Survivor Benefit Plan ("SBP") annuity" through the husband's military retirement and required the husband to execute any documents required to make the wife his beneficiary. *Id.* at 287.

The Houston Fourteenth Court of Appeals noted that the "agreed divorce decree does not specifically divide the SBP annuity or mention Wife's status as a former spouse beneficiary to the SBP annuity." *Id.* Further, the decree did not require the husband to name the wife as a former spouse beneficiary to the SBP annuity. *Id.* at 288. The appeals court concluded the trial court erred by including the beneficiary designation in the domestic relations order because it was not part of the parties' agreement and it imposed "an additional obligation not included in the agreed divorce decree." *Id.*; *see also In re A.E.R.*, No. 02-05-00057-CV, 2006 WL 349695, at *3 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (per curiam) (mem. op.) (trial court erred by including provision in amended QDRO requiring wife to be named as former spouse for purposes of survivor benefits because neither decree nor original QDRO addressed survivor

–14–

benefits and record was devoid of any evidence of agreement between parties regarding these "additional benefits").[6]

The only evidence before the trial court pertaining to the award of survivor's benefits was Phillips's testimony that Merck treated the QJSA as a separate benefit and that, by naming Judith as Donald's surviving spouse, the 2002 QDRO awarded Judith a QJSA. According to Phillips, the QJSA was an additional benefit to the property awarded to Judith in the decree and awarded Judith more property than she was awarded in the decree. There was no evidence of Donald's and Judith's intentions about the QJSA when they agreed to the property division in the decree.

There was evidence before the trial court that the QJSA was a separate benefit from the retirement benefit awarded to Judith in the decree. *See Hicks*, 348 S.W.3d at 288; *In re A.E.R.*, 2006 WL 349695, at *3. Accordingly, we conclude the trial court did not abuse its discretion in determining the divorce decree did not award Judith a QJSA. *See Moroch*, 174 S.W.3d at 857. Because the QJSA was awarded to Donald under the residuary clause in the divorce decree, the provision in the 2002 QDRO naming Judith as Donald's surviving spouse did not comport with the decree, and the 2002 QDRO was void as to the surviving spouse issue. *See* TEX. FAM. CODE ANN. § 9.007(b); *Shanks*, 110 S.W.3d at 449; *DeGroot*, 260 S.W.3d at 663. The trial court, therefore, had the power to amend the surviving spouse provision in the 2002 QDRO to make it comport with the divorce decree. *See Gainous*, 219 S.W.3d at 106–07.

---

[6] In her reply brief, Judith relies on *Harvey v. Harvey*, 905 S.W.2d 760 (Tex. App.—Austin 1995, no pet.) to argue the award to Judith of 57.5% of Donald's retirement benefit necessarily included survivor benefits. However, *Harvey* involved a QDRO requiring the payment of a QPSA, not a QJSA. *See id.* at 762 (order named wife as surviving spouse "[i]n the event that the [husband] dies before payments to the [wife] begin"). Further, the *Harvey* court specifically noted there was no evidence the husband's employer treated the QPSA as "being separate and distinct from 'retirement benefits'" or of the parties' intention regarding the QPSA. *Id.* at 764. In this case, there was evidence Merck treated the QJSA as a separate benefit from the one awarded to Judith in the decree.

We resolve Judith's three issues against her and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

121576F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUDITH KAREN BESHEARS, Appellant

No. 05-12-01576-CV          V.

DONALD BESHEARS, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 429-52873-98.
Opinion delivered by Justice Fillmore, Justices FitzGerald and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Donald Beshears recover his costs of this appeal from appellant Judith Karen Beshears.

Judgment entered this 30th day of January, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE