**Reversed and Remanded and Opinion filed August 10, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00646-CV

## IN THE MATTER OF THE MARRIAGE OF SHAWN DENNING AND SURRON STOKES

**On Appeal from the 507th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-21638**

## OPINION

Surron Stokes appeals from the trial court's order denying her motion for entry of a qualified domestic relations order (QDRO) filed after the trial court signed a final divorce decree dissolving her marriage to Shawn Denning and enforcing the parties' mediated settlement agreement (MSA). In three issues, Stokes contends that she is entitled to a QDRO that reflects an award of Denning's retirement account contributions expressed as a percentage of accumulated contributions that accrued during the marriage. We reverse the trial court's order and remand for proceedings consistent with this opinion.

## *Background*

Denning filed for divorce in April 2018, and the parties went to mediation. The parties initially agreed that Stokes would receive fifty percent of Denning's contributions made to his retirement account during the marriage, in an amount "not less than $17,534." Due to a discrepancy regarding the amount in contributions Denning thought he made to his retirement account during the marriage, the parties went back to mediation to renegotiate this term and signed the MSA that is the subject of this appeal.[1] During the second mediation, Denning agreed to pay Stokes a lump sum of $17,534 (in lieu of a percentage) out of his retirement account.

Denning's retirement account is maintained by the Texas County & District Retirement System (TCDRS).[2] The MSA states, "$17,534 from [Denning's] retirement with TCDRS earned from the date of marriage . . . is awarded to [Stokes]. The remainder of [Denning's] retirement with TCDRS earned from the date of marriage . . . is awarded to [Denning]." As a prerequisite to releasing the funds to an alternate payee, TCDRS requires a QDRO that sets forth the amount due expressed as a percentage of accumulated contributions that accrued during the marriage, not expressed as a lump sum. Stokes' counsel asked Denning to agree to convert the number to a percentage in the divorce decree, but he refused. The trial court then assigned an arbitrator to the case, who proposed a final divorce decree that reflected a lump sum. The trial court signed a final divorce decree, consistent with the arbitrator's proposal, awarding Stokes "[a] lump sum in husband's

---

[1] Denning initially thought that he contributed $35,068 to his retirement account during the marriage, and $17,534 is fifty percent of that amount.

[2] *See* Tex. Gov't Code §§ 841.001(14) ("'Retirement system' means the Texas County and District Retirement System."), 841.003 ("The Texas County and District Retirement System is continued in existence and is the name by which the business of the retirement system shall be transacted, all its funds invested, and all its cash and other property held.").

retirement account with the Harris County Sheriff's Department (TCDRS) . . . in the amount of $17,534.00, which is to represent wife's community interest in husband's retirement from June 14, 2014 through March 11, 2019."

Stokes then filed a motion for entry of QDRO and asked the trial court to enter a QDRO "in the form presented." The form presented to the trial court included the following language: "This Order assigns to Alternate Payee a separate interest in the Plan attributable to 86.84% of Participant's accumulated contributions that accrued during the period of marriage. The dates of marriage are June 22, 2014 through March 12, 2019." Stokes also attached to her motion a letter from TCDRS stating, "The accumulated contributions that accrued from June 22, 2014 through February 28, 2019 for [Denning's] account are $20,192.64. The March 2019 deposit has not been posted to date."[3] After a hearing, the trial court denied the motion. Stokes moved for a new trial, again asking the trial court to convert the lump sum into a percentage. The trial court denied the motion for new trial.

## *Discussion*

Stokes challenges in three issues the trial court's refusal to sign a QDRO that sets forth the amount due as a percentage of accumulated contributions that accrued during the marriage on the grounds that the trial court did not (1) sign a QDRO consistent with the intent of the parties as expressed in the MSA, (2) follow TCDRS's regulations regarding QDROs, or (3) find that Stokes should receive a certain percentage of the retirement fund. Denning contends that the requested QDRO would not be consistent with the MSA because the parties agreed Stokes

---

[3] We note that there is a discrepancy among the dates for the period of marriage set forth in the divorce decree, requested QDRO, and the TCDRS letter. Denning agrees that during the marriage, he contributed "with interest approximately $20,541.83" to the account, not including employer matching contributions.

would receive a lump sum from Denning's retirement account. We address these three related issues together.

Stokes contends that the trial court erred in refusing to sign a QDRO that reflected the amount due as a percentage of accumulated contributions that accrued during the marriage because a QDRO in that format is required to effectuate and implement the parties' agreement under the MSA for Stokes to receive a portion of the retirement account. MSAs that meet certain statutory formalities are binding on the parties and require the rendition of a divorce decree that adopts the parties' agreement. Tex. Fam. Code § 6.602(b)-(c); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012). Unlike other family law agreements, a trial court is not required to determine if the property division in an MSA is "just and right" before entering a final decree based on the MSA. *Milner*, 361 S.W.3d at 618. Once signed, an MSA cannot be revoked. *Id.*

We interpret MSAs under rules of contract construction. *See id.* at 619. If the agreement's language can be given a certain and definite meaning, the agreement is not ambiguous, and its construction is a question of law. *Id.* If the agreement is susceptible to more than one reasonable interpretation, then the agreement is ambiguous, which creates a fact issue on the parties' intent. *Id.* Under the terms of the MSA in the present case, the parties agreed that Stokes would receive "$17,534 from [Denning's] retirement with TCDRS earned from the date of marriage" until the date of the MSA. So, the clear, unambiguous intention of the parties as expressed in the instrument was for Stokes to receive that amount.

We turn to whether the trial court erred in refusing to sign a QDRO in the format required by TCDRS expressing the amount awarded to Stokes as a percentage of accumulated contributions that accrued during the marriage. Stokes contends that whether the amount to which she is entitled is expressed as a lump

4

sum or a percentage of the accumulated contributions that accrued during the marriage, the amount is the same and can be determined by a simple mathematical equation. We agree.

A QDRO is a species of post-divorce enforcement order. *Quijano v. Quijano*, 347 S.W.3d 345, 353 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The purpose of a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan. *Id*. at 353–54. As with any post-divorce enforcement or clarification order, a QDRO may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. *Id*. at 354; *see also Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003). But a QDRO may more precisely specify the manner of carrying out the property division previously ordered if the substantive division of the property is not altered. *Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018). A QDRO, like a divorce decree, is a final, appealable order. *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.) (citing *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003) (reviewing post-divorce QDRO on appeal)).

Accrued state retirement benefits may be divided by a QDRO and paid to a former spouse. Tex. Gov't Code § 841.0091(a); *cf. Stavinoha v. Stavinoha*, 126 S.W.3d 604, 615 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (discussing QDROs for police officer pension systems). By statute, the state retirement system must divide the accrued benefits to a former spouse in accordance with a QDRO that "strictly follows the terms and format of the model qualified domestic relations order, as well as any other requirements, adopted by the [TCDRS] board of trustees for this purpose." Tex. Gov't Code § 841.0091(a). TCDRS, through its board of trustees, "has sole authority and discretion to . . . (1) specify [QDRO]

5

terms and format . . . ; (2) require strict compliance for qualification; (3) specify the dates on which a distribution to an alternate payee may or must begin; and (4) establish rules for the administration of" the division of state retirement benefits. *Id.* § 841.0091(d). TCDRS requires a QDRO to "clearly specify . . . the alternate payee's interest in the plan . . . as a percent of participant's accumulated contributions that accrued during the marriage." 34 Tex. Admin. Code § 109.5(a)(2).

The parties agreed Stokes would receive $17,534 from the retirement account. Stokes attached a letter from TCDRS to her motion for entry of QDRO stating that "[t]he accumulated contributions that accrued from June 22, 2014 through February 28, 2019" for Denning's account were $20,192.64. The letter also states that the approved QDRO "format for TCDRS requires the parties to express any split as a percentage of the accumulated contributions that accrued during the period of marriage." We presume the trial court took judicial notice of the letter in its record. Tex. R. Evid. 201(c); *see also In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Moreover, at the hearing on the motion, Stokes directed the trial court to the letter, so it was squarely before the court.[4] *See Strong-Gribble v. Latif & Co.*, No. 14-19-00576-CV, 2021 WL 2656626, at *2 (Tex. App.—Houston [14th Dist.] June 29, 2021, no pet. h.) (mem. op.).

Stokes is correct that determining the applicable percentage is a matter of simple math, which can be ascertained by dividing $17,534 by the accumulated contributions accrued during the marriage. However, the TCDRS letter presented

---

[4] Denning argues on appeal that the letter includes hearsay statements, but he did not object on that basis during the hearing or in response to the motion. *See* Tex. R. Evid. 802 (stating that hearsay not objected to has probative value); *Methodist Hosps. of Dallas v. Amerigroup Tex., Inc.*, 231 S.W.3d 483, 492 (Tex. App.—Dallas 2007, pet. denied) (holding party waived hearsay objection to summary judgment evidence by failing to object below).

by Stokes includes contributions that accrued between June 22, 2014 and February 28, 2019; whereas, Stokes seeks the percentage of accumulated contributions to which she is entitled that accrued between June 22, 2014 and March 12, 2019. It is not clear on this record whether Denning made additional contributions between February 28 and March 12, 2019 that would alter the percentage of the retirement account to which Stokes is entitled. Be that as it may, $17,534 is a certain percentage of the applicable total, which is readily ascertainable by the parties.[5]

The trial court would not "amend, modify, alter, or change the division of property made or approved in the decree of divorce" by entering a QDRO in compliance with TCDRS regulations. Stokes is entitled to a QDRO in that format to effectuate the intent of the parties as expressed in the MSA for Stokes to receive $17,534 from the retirement account. Thus, the trial court erred in refusing to enter a QDRO in compliance with TCDRS regulations expressed as a percentage of the accumulated contributions that accrued during the marriage. We sustain Stokes' appellate issues.

## *Conclusion*

Having concluded that the trial court erred in refusing to enter a QDRO in the format required by TCDRS clearly specifying Stokes' interest in the retirement plan as a percentage of Denning's accumulated contributions that accrued during the marriage, we reverse the trial court's order denying Stokes' motion for entry of a QDRO and remand for proceedings consistent with this opinion. *See Beshears*, 423 S.W.3d at 500 (holding court that renders divorce decree retains power to

---

[5] Denning contends the letter "clearly is not reflective of [his] retirement plan nor applicable percentage to be used." Yet he did not present any evidence to refute the number in the letter, and the letter was the only evidence before the trial court of the accumulated contributions that accrued during the marriage.

"enforce compliance with the original division of the property") (citing Tex. Fam. Code §§ 9.002, 9.006(a), 9.008); *see also* Tex. Fam. Code 9.101(a) ("[T]he court that rendered a final decree of divorce . . . retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits . . . to an alternate payee or other lawful payee."); *Quijano*, 347 S.W.3d at 353 ("After a trial court issues a divorce decree, it generally retains continuing subject-matter jurisdiction to enforce and to clarify the property division contained with[in] the decree [including QDROs].").

/s/ Frances Bourliot
Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.