

# NUMBER 13-20-00118-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SHARON H. WINDHAM,                                      Appellant,

v.

WILLIAM M. WINDHAM JR.,                                   Appellee.

## On appeal from the 343rd District Court
## of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Hinojosa**

Appellant Sharon H. Windham appeals the trial court's order denying her petition to enter a qualified domestic relations order (QDRO) reflecting her interest in appellee William M. Windham Jr.'s retirement benefits as awarded in the parties' divorce decree. *See* TEX. FAM. CODE. ANN. § 9.102. In two issues, which we treat as one, Sharon argues

that the trial court's order improperly amends, modifies, or alters the express terms of the divorce decree. We reverse and remand.

## I.    BACKGROUND

Sharon and William divorced in 2000 after twenty-two years of marriage. The divorce decree awarded Sharon "50% of [William's] Civil Service Retirement Benefits accrued, as entitled, as of the date . . . of the entry of this decree . . . as a result of [William's] Civil Service employment." On June 12, 2001, the trial court signed a QDRO[1] authorizing the Federal Office of Personnel Management to pay Sharon an interest in William's monthly annuity payments and providing a formula to calculate that interest.[2] The QDRO also provided that Sharon was entitled to a survivor annuity should William predecease her.[3]

William retired on December 31, 2011, and the parties received their respective interest in William's monthly annuity payments in accordance with the QDRO. On March 3, 2016, William filed a motion to vacate the QDRO, complaining that it improperly

---

[1] "The purpose of a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan." *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.).

[2] The QDRO specifically references *Berry v. Berry*, as defining the extent of Sharon's marital rights in William's retirement benefits. 647 S.W.2d 945, 947 (Tex. 1983). In *Berry*, the Texas Supreme Court held that retirement benefits accruing for services rendered after a divorce were not part of the parties' community estate subject to a just and right division. *Id*. As such, *Berry* modified the existing formula for calculating the community interest in a defined benefit plan in situations where the spouse is not retired at the time of divorce. *See id*. We discuss the *Berry* formula in part II.B. of this memorandum opinion.

[3] "[A] qualified civil-service employee, at retirement, is entitled to retirement benefits which will provide monthly payments to the retiree during the retiree's lifetime." *Kadlecek v. Kadlecek*, 93 S.W.3d 903, 906 (Tex. App.—Austin 2002, no pet.) (citing 5 U.S.C.A. § 8338(a)). If a retiree's spouse is entitled to a survivor annuity, "the day after the retiree dies the retirement benefits cease, the survivor annuity commences, and the surviving spouse continues to receive payments until the spouse's death or some other terminating event occurs." *Id*. (citing 5 U.S.C.A. §§ 8341(b)(1), (c), 8345(c)). When a survivor annuity is elected, a premium is deducted from the retiree's annuity payments. *Id*. at 907 (citing 5 U.S.C.A. § 8339).

2

awarded a survivor benefit to Sharon resulting in a deduction of a survivor annuity premium from William's monthly benefits.[4] William requested that the trial court enter an amended QDRO "which conforms with the property division outlined in the parties['] divorce decree." On January 17, 2017, the trial court signed an order vacating the QDRO. The court found that the divorce decree "did not include a survivor's annuity award," and therefore, the QDRO "substantially change[d] the division of the parties['] community estate[.]"[5] The trial court did not sign a new QDRO otherwise reflecting the divorce decree's award of retirement benefits to Sharon. On July 25, 2018, Sharon filed a petition to enter a QDRO requesting that the trial court enter an order "that effectuates the division of property as set out in the decree of divorce." William answered asserting a general denial.

The trial court heard the matter on March 27, 2019. At the hearing, William testified that he was employed as a civilian with the Department of the Navy throughout the parties' twenty-two-year marriage and that he worked for thirteen years outside of the marriage. He maintained that he was currently receiving $5,000 per month from his civil service retirement annuity. William and his counsel both represented that Sharon was only entitled to a fixed sum under the 2001 divorce decree and that she had previously received more than that sum in accumulated monthly payments.[6] Sharon maintained that

---

[4] The record does not reflect the amount each party was receiving under the existing QDRO as William only complained of the inclusion of a survivor benefit. However, William represented in his motion that the premium resulted in a $1,000 monthly deduction from the total benefit received.

[5] The trial court's 2017 order includes no finding or conclusions regarding whether the QDRO failed to properly calculate Sharon's interest in the monthly annuity payments.

[6] William did not specify the precise sum he believed the decree awarded. He testified that Sharon previously received approximately $102,000 in cumulative monthly payments before the trial court vacated

3

she was entitled to an ongoing interest in William's monthly annuity payment throughout William's lifetime. The trial court admitted the following exhibits into evidence: (1) the 2000 divorce decree; (2) the 2001 QDRO; (3) the 2016 motion to vacate; and (4) the 2017 order vacating the QDRO.[7]

At the conclusion of the hearing, the trial court orally denied the petition. Thereafter, Sharon filed a "Motion for Reconsideration, Objection to Proposed Order and/or to Enter Order." The trial court signed an order denying Sharon's petition, which included a finding that Sharon "has received all retirement monies due to her under the Final Decree of Divorce." Sharon now appeals.

## II.     DISCUSSION

### A.     Standard of Review & Applicable Law

"We review a trial court's ruling on a post-divorce motion for enforcement or clarification for an abuse of discretion." *Howard v. Howard*, 490 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *DeGroot v. DeGroot*, 369 S.W.3d 918, 922 (Tex. App.—Dallas 2012, no pet.).

We interpret the language of a divorce decree in the same manner in which we interpret other judgments. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). "We construe the decree as a whole to harmonize and give effect to the entire decree." *Id*. If the decree is unambiguous, we adhere to the literal language used. *Id.* If the decree is

---

the 2001 QDRO.

[7] These filings also appear in the clerk's record.

ambiguous, we interpret it by reviewing both the decree and the record. *Id.* "Whether a divorce decree is ambiguous is a question of law." *Id.* at 901–02.

A QDRO is a type of post-divorce enforcement order. *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.). A trial court that renders a final divorce decree "retains continuing, exclusive jurisdiction to render an enforceable [QDRO] permitting payment of pension, retirement plan, or other employee benefits . . . to an alternate payee or other lawful payee." TEX. FAM. CODE ANN. § 9.101(a). The trial court also retains "jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court." *Id*. § 9.1045(a). However, after its plenary power expires, the trial court may not enter any order that "amends, modifies, alters, or changes the actual, substantive division of property" reflected in the final divorce decree. *Id.* § 9.007(b); *see Beshears*, 423 S.W.3d at 501.

## B.    Analysis

Sharon does not dispute that the original QDRO should have been vacated because it improperly awarded her a survivor benefit. Sharon argues, however, that the trial court abused its discretion in declining to enter an amended QDRO because the divorce decree entitled her to an ongoing interest in William's monthly retirement payments, rather than a fixed amount. Accordingly, Sharon states that the trial court's order improperly modifies the terms of the final divorce decree. William counters that the divorce decree awarded Sharon a fixed sum as reflected by the value of his retirement plan at the time of divorce.[8]

---

[8] William does not state what that fixed sum is or how it should be calculated.

5

Retirement plans are commonly classified as either a defined contribution plan or a defined benefit plan. *See Reiss v. Reiss*, 118 S.W.3d 439, 440 n.1 (Tex. 2003) (citing *Shanks v. Treadway*, 110 S.W.3d 444, 445 n.1 (Tex. 2003)). In a defined contribution plan, the employee has a separate account similar to that of a savings account into which the employee and employer make contributions. *Smith v. Smith*, 22 S.W.3d 140, 148–49 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The value of a defined contribution plan is readily ascertainable at any time simply by looking at the account balance. *Baw v. Baw*, 949 S.W.2d 764, 768 (Tex. App.—Dallas 1997, no pet.); *see also Brazell v. Brazell*, No. 04-13-00491-CV, 2014 WL 1871361, at *1 (Tex. App.—San Antonio May 7, 2014, pet. denied) (mem. op.).

A defined benefit plan, on the other hand, provides the employee a monthly benefit beginning at retirement.[9] *Smith*, 22 S.W.3d at 148; *see also Brazell*, 2014 WL 1871361, at *2. "The benefit is based on the number of years of service the employee has at the time of retirement, along with other factors such as age and salary history." *Smith*, 22 S.W.3d at 148 (citing Steven R. Brown, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post–Judgment Partition Actions*, 37 BAYLOR L. REV. 107, 115 (1985)). "An employee spouse's accrued benefits in a defined benefit retirement plan that have been earned during marriage, but have not vested and matured at the time of divorce, are a contingent property interest and a community asset subject to division upon

---

[9] "Like defined contribution plans, defined benefit plans may also be contributory or noncontributory, but unlike defined contribution plans, individual account balances need not be maintained for each participant." Steven R. Brown, An Interdisciplinary *Analysis of the Division of Pension Benefits in Divorce and Post-Judgment Partition Actions*, 37 BAYLOR L. REV. 107, 115 (1985) (internal citations omitted). In a defined benefit plan, "the employer pools all contributions (both the employer's and employee's if contributory) into one common fund." *Id*.

divorce." *Boyd v. Boyd*, 67 S.W.3d 398, 407 (Tex. App.—Fort Worth 2002, no pet.) (citing *Cearley v. Cearley*, 544 S.W.2d 661, 665–66 (Tex. 1976)).

William's civil service retirement is a defined benefit plan in that it promises William a monthly benefit beginning at retirement, and the annuity payments are based on years of service and salary history. *See* 5 U.S.C.A. §§ 8336, 8339(a); *Kadlecek v. Kadlecek*, 93 S.W.3d 903, 906 (Tex. App.—Austin 2002, no pet.) ("[A] qualified civil-service employee, at retirement, is entitled to retirement benefits which will provide monthly payments to the retiree during the retiree's lifetime."); *see also Brazell*, 2014 WL 1871361, at *5. In 1983, the Texas Supreme Court established "a formula for determining the extent and value of the community interest in an employee spouse's defined-benefit plan, when[, as in this case,] the latter began plan participation during marriage but retired after divorce." *Douglas v. Douglas*, 454 S.W.3d 591, 596 (Tex. App.—El Paso 2014, no pet.) (citing *Berry v. Berry*, 647 S.W.2d 945, 946–47 (Tex. 1983)). That formula values the community interest as follows: (number of months married and in plan) ÷ (number of months in plan at time of retirement) x (monthly benefit that employee would have received at divorce date, whether then eligible to retire or not). *Gainous v. Gainous*, 219 S.W.3d 97, 109 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Berry*, 647 S.W.2d at 947). This formula represents "the payments that hypothetically would have been due if, on the date that the employed spouse's marital status changed, the benefits were vested and matured and he retired." *Sprague v. Sprague*, 363 S.W.3d 788, 795 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Berry*, 647 S.W.2d at 946). In other words, the value of the community interest in a defined benefit plan is expressed as a fraction of the monthly

7

annuity payments. *See Gainous*, 219 S.W.3d at 109. Because such payments continue for the life of the retiree, the community interest in those payments cannot be valued as a fixed sum at the time of divorce.

The divorce decree awarded Sharon "50% of [William's] Civil Service Retirement Benefits accrued, as entitled, as of the date . . . of the entry of this decree . . . as a result of [William's] Civil Service employment." Consistent with *Berry*, the divorce decree limits the community interest to those benefits that have accrued at the time of the divorce. *See Berry*, 647 S.W.2d at 947. In light of the foregoing authority concerning the division of defined benefit plans, we interpret the decree as awarding Sharon an ongoing 50% interest in the community portion of William's *monthly* retirement benefits throughout William's lifetime. *See id.*; *May v. May*, 716 S.W.2d 705, 711 (Tex. App.—Corpus Christi–Edinburg 1986, no writ) (applying *Berry* to determine spouse's interest in monthly annuity payment). The trial court, accepting William's position that the divorce decree awarded Sharon a fixed sum, found that Sharon had already received "all retirement monies due to her[.]"[10] This conclusion is contrary to the language of the decree as well as the applicable precedent for valuing the community interest in a defined benefit plan. The trial court's order denying Sharon's petition to enter a QDRO improperly modifies the division of property in the divorce decree because it divests Sharon of her ongoing interest in William's monthly payments. *See* TEX. FAM. CODE ANN. § 9.007(b); *Beshears*, 423 S.W.3d at 501.

---

[10] The trial court made no findings regarding the fixed amount it believed Sharon was entitled to receive under the divorce decree.

For the foregoing reasons, we conclude that the trial court acted without reference to guiding rules and principles and abused its discretion in denying Sharon's petition. *See DeGroot*, 369 S.W.3d at 922; *Gainous*, 219 S.W.3d at 111 (holding that the trial court abused its discretion in denying spouse's motion to enforce divorce decree relating to retirement benefits); *cf. Brazell*, 2014 WL 1871361, at *5 (concluding that trial court did not err in awarding a percentage of monthly annuity payment to the spouse instead of a fixed sum because civil service retirement benefits constituted a defined benefit plan). We sustain Sharon's sole issue. On remand, we instruct the trial court to enter a QDRO accounting for Sharon's interest in the community portion of William's monthly civil service retirement payments as awarded in the divorce decree and as calculated in accordance with *Berry*, 647 S.W.2d 945, and its progeny.[11] We further instruct the trial court to enter any necessary orders providing for the payment of past-due benefits to which Sharon is entitled. *See* TEX. FAM. CODE ANN. § 9.006.

## III.   CONCLUSION

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this memorandum opinion.

LETICIA HINOJOSA
Justice

Delivered and filed on the
27th day of January, 2022.

---

[11] Whether the 2001 QDRO properly calculated Sharon's interest in William's monthly retirement benefit was not an issue before the trial court, and we do not address it in this appeal.