**Winnie HOWARD, Appellant**

v.

**Stephen HOWARD, Appellee**

**NO. 01–14–00761–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 31, 2016

Rehearing Overruled June 2, 2016

appropriate method for allocation of retirement benefits pursuant to the parties' agreed divorce decree. In particular, we determine whether a divorce decree that ordered that one spouse receive one-half of any vested retirement benefits that related to the months of employee service during the marriage was limited to one-half of the employee's payroll contributions to the plan. The trial court found the decree to be so limited and ordered that Stephen Howard pay Winnie Howard one-half of the employee payroll contributions that Stephen Howard made toward his employment-related retirement plan during the months of their marriage.

Winnie Howard challenges this interpretation of the parties' divorce decree, contending that the trial court erred in limiting her allocation to one-half of payroll contributions during the marriage instead of one-half of the vested retirement benefits relating to the months of Stephen's employment during the marriage. We agree, and hold that the divorce decree awarded to Winnie one-half of the vested benefits that accrued during the months of the marriage rather than one-half of the employee payroll contributions made during the months of the marriage. We therefore reverse and remand.

Ronique Bastine Robinson, Bastine and Associates, Stafford, TX, for Appellant.

Kim K. Ogg, R. Scott Poerschke, Chris Ainsworth, The OGG Law Firm, PLLC, Houston, TX, for Appellee.

Panel consists of Justices Keyes, Bland, and Massengale.

## OPINION

Jane Bland, Justice

In this appeal from a qualified domestic relations order (QDRO), we determine the

## BACKGROUND

The Howards married on November 23, 1979 and were divorced on November 28, 1988; thus, they were married for approximately nine years. About six months after the couple married, Stephen began working for the Houston Police Department. He continued working for HPD after the divorce. The QDRO enforces the community property division within the Howards' 1988 divorce decree, which provided that Winnie Howard was entitled to "one-half of all sums related to any vested retirement or pension plan of Stephen Howard

existing by reason of his employment during the marriage." We set forth the divorce decree, the benefit plan, and the trial court's findings in connection with both.

### A. The 1988 Divorce Decree

The property division section of the Howards' 1988 divorce decree provides, in pertinent part:

DIVISION OF PROPERTY

The Court finds that [Winnie] and [Stephen] have entered into an agreement for the division of their estate.... It is ordered ... that the estate of the parties is divided as follows:

. . .

[Winnie] is awarded the following as her sole and separate property, and [Stephen] is divested of all right, title, and claim in and to such property:

. . .

3. One half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefit programs existing by reason of [Stephen]'s employment during the marriage.

### B. Stephen's Retirement Benefits

Beginning with his date of employment, Stephen participated in the Houston Police Officer's Pension System ("HPOPS"). During the marriage, Stephen worked for HPD for eight and a half years and had made employee payroll contributions of $20,765 into HPOPS.

At the time of the Howards' divorce, the HPOPS benefits in existence included:

- A retirement benefit, for which officers with 10 years of service or more with HPD may be eligible. This benefit allows an officer to elect a return of contributions or a benefit payable at age 60 of 2.75% of the final average pay of each year of credited pension service.
- A service retirement benefit, which is available to an officer who has earned 20 years of pension service.

In the years after the Howards' 1988 divorce, HPOPS added two benefits:

- the Deferred Retirement Option Program [DROP] benefit: This benefit, first offered in 1995, provides an officer who has served with the HPD for 20 years with the option to defer retirement; if retirement is deferred after 20 years of employment, then eligible retirement benefits pay into another account while the officer continues working, which builds into a lump sum available when the officer actually retires.

and

- A lump sum retirement bonus: In 1998, HPOPS added a $5,000 lump sum payment for retiring officers who had 20 years of service.

An HPD employee who leaves employment before becoming vested in the HPOPS plans is entitled to a refund of the employee payroll contributions paid into the plan but is not entitled to any retirement benefits.

In June 2001, HPOPS amended its plan to allow officers who had accrued years of service while in other City of Houston employment to add that service time for purposes of benefit eligibility. Before his employment with HPD, Stephen had worked for the Houston Fire Department for two years and three months, beginning on February 25, 1978 and continuing until his employment with HPD; thus, he worked for HFD for about six months during the marriage and a year and nine months prior to the marriage. This option added the two years and three months of service credit that he had earned as a

Houston firefighter to Stephen's years of HPD service for vesting purposes.

In 1998, based on his accumulated 20 years of service credit, Stephen was eligible to retire from the HPD. He elected not to retire and participated in the DROP program. His "DROP entry date" for purposes of accruing DROP benefits was December 12, 1998.

## C. The Trial Court's Findings

After hearing evidence in a bench trial, the trial court entered the QDRO interpreting the divorce decree and awarding benefits. The trial court found:

> The decree plainly provides that [Winnie] was awarded one-half [or 50%] of any and all sums related to any vested retirement/pension plan of [Stephen] existing by reason of [Stephen]'s employment during the marriage.

The trial court further found that on November 28, 1988—the date of the divorce—Stephen

> had a vested retirement/pension benefit of $20,765.00 with HPOPS and had 8 years and 6 months of credited pension service. [Stephen] had no other vested retirement/pension benefit with HPOPS on [the date of the divorce], [Stephen] was not entitled to interest on his vested retirement/pension benefit on [the date of the divorce. . . .
>
> $20,765.00 reflects the total vested retirement/pension benefits available to [Stephen] on the date of divorce.

Based on these findings, the trial court ordered:

> [Winnie] shall as of the date of this order have the right to be paid the 50% of 20,765 or TEN THOUSAND THREE HUNDRED EIGHTY–TWO DOLLARS AND FIFTY CENTS ($10,-382.50) of [Stephen]'s retirement/pension benefit with HPOPS.

Winnie appeals the trial court's order, contending that the trial court erred in its interpretation of the divorce decree because the benefit of eight years and six months of credited pension service was not a refund of the employee contribution but instead was a pro-rata share of the retirement benefits accrued. Stephen responds that the trial court correctly awarded a lump sum return of one-half of the contributions that he made during the marriage, because he had not vested in the HPOPS retirement plan as of the date of the divorce.

## DISCUSSION

The parties' dispute centers on the provision in the 1988 divorce decree granting *"[o]ne half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefit programs existing by reason of [Stephen]'s employment during the marriage."* We must decide whether—as Stephen contends and the trial court found—the divorce decree awarded retirement benefits for plans that already had "vested" as of the date the Howards' divorce in 1988, or whether, as Winnie contends, it awarded Winnie an interest in vested retirement benefits that came due and payable to the beneficiary in the years after the marriage that "exist[ed] by reason of" Stephen's employment during the marriage.

## I. Division of Retirement Benefits

### A. Standard of Review

 We review a trial court's ruling on a post-divorce motion for enforcement or clarification for an abuse of discretion. *DeGroot v. DeGroot,* 369 S.W.3d 918, 921–22 (Tex.App.–Dallas 2012, no pet.); *Gainous v. Gainous,* 219 S.W.3d 97, 103 (Tex. App.–Houston [1st Dist.] 2006, pet. de-

nied). A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex.App.–Houston [1st Dist.] 2011, no pet.) (citing *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex.2010)); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

### B. Relevant Marital Property Law

#### 1. Interpretation of property division provisions

■ In this case, the parties have virtually no dispute concerning the circumstances of their divorce or the facts relating to Stephen's employment during and after their marriage; rather, they contest the meaning of the agreed divorce provision dividing Stephen's HPOPS retirement benefits. An agreed property division incorporated into a final divorce decree is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986); *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex.App.–Dallas 2014, no pet.); *McCoy v. Rogers*, 240 S.W.3d 267, 275–76 (Tex.App.–Houston [1st Dist.] 2007, pet. denied). Our primary concern in interpreting a contract is to ascertain the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex.2011). "We 'construe contracts from a utilitarian standpoint bearing in mind the particular ... activity sought to be served,' and avoiding unreasonable constructions when possible and proper." *Plains Exploration & Prod. Co. v. Torch Energy Advisors*, 473 S.W.3d 296, 305 (Tex.2015) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527,

530 (Tex.1987)). We construe the decree as a whole to harmonize and give effect to the entire agreement so that none of its provisions will be rendered meaningless. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If a clear and definite legal meaning exists in a contract, then it is not ambiguous as a matter of law, and we give effect to the decree according to its literal language. *FPL Energy v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 63 (Tex.2014); *Coker*, 650 S.W.2d at 393.

■ All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex.2001); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex.App.–Houston [14th Dist.] 2004, no pet.). Retirement benefits accrued during a marriage are presumptively community property, but those accrued before or after marriage are not. *See Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122 (Tex.App.–San Antonio 1996, writ denied) (holding that retirement benefits that accrued prior to marriage were separate property and those accrued during marriage were community property); *see also* TEX. FAM. CODE ANN. § 3.002 (West 2006) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."); *Dewey v. Dewey*, 745 S.W.2d 514, 518 (Tex.App.–Corpus Christi 1988, writ denied) (holding benefits accrued in retirement plan during marriage were community property).

■ If the decree is ambiguous, we review the record along with the decree to aid interpreting the judgment. *Gainous*, 219 S.W.3d at 108 (citing *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex.2003)). But if a clear and definite legal meaning exists

in a contract, then it is not ambiguous as a matter of law, and we give effect to the decree according to its literal language. *FPL Energy*, 426 S.W.3d at 63; *Gainous*, 219 S.W.3d at 108.

### 2. Post-divorce enforcement

 Winnie sought a post-decree QDRO because the property division provisions of their decree required interpretation to effectuate the division of property ordered by the court. *See* TEX. FAM. CODE ANN. § 9.104 (West 2006). A trial court that renders a divorce decree retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. Specifically, the court has continuing jurisdiction to "render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order." TEX. FAM. CODE ANN. § 9.006(a) (West Supp.2015). Further, "[o]n a finding . . . that the original form of the division of property is not specific enough to be enforceable by contempt," the trial court has continuing jurisdiction to "render a clarifying order setting forth specific terms to enforce compliance with an original division of property." *Id.* § 9.008(b) (West 2006). After its plenary power expires, however, the court may not alter, amend, or modify the substantive division of property in the decree. *Id.* § 9.007(a), (b) (West 2006); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex.2003);

*Quijano v. Quijano*, 347 S.W.3d 345, 353 (Tex.App.–Houston [14th Dist.] 2011, no pet.).[1]

### C. Analysis

 The decree granted to Winnie, "[o]ne half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefit programs existing by reason of [Stephen]'s employment during the marriage." According to Stephen's interpretation, a refund of Stephen's payroll contributions was the only "vested retirement benefit" at the time of the divorce—in other words, the hypothetical right to return of Stephen's HPOPS contributions if he were to terminate his employment with the police department on the date of divorce.

Stephen's interpretation of the decree, adopted by the trial court, disregards the express terms of the parties' agreed divorce decree because it ignores the provision's use of the terms "all sums related to" and benefits "existing by reason of" employment during the marriage, which is broader than sums that are "then-existing." If the parties had divided the amount of Stephen's contribution on deposit in the HPOPS plan at the time of divorce, the inclusion of "sums related to" would not only be surplusage, it would erroneously imply that a single sum certain—half of Stephen's payroll contribu-

1. In 1984, Congress amended the Employee Retirement Income Security Act ("ERISA") to clarify that a state law judgment relating to marital property rights does not result in a prohibited assignment or alienation of retirement benefits and is enforceable as long as it meets certain requirements. S.Rep. No. 98–575, at 3 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2547, 2549; *see* 29 U.S.C.A. § 1056(d) (2014). A QDRO—defined as an order meeting those requirements—creates or recognizes an alternate payee's right to re-

ceive all or a portion of the benefits payable to a participant under a retirement plan. *Quijano*, 347 S.W.3d at 353–54; *see* 29 U.S.C.A. § 1056(d)(3)(B)(i) (2014);*see also* 29 U.S.C.A. § 206(d)(3)(K) (2007). Texas law treats a QDRO as a species of post-divorce enforcement order. *Gainous*, 219 S.W.3d at 107. As a local government plan, HPOPS is not subject to ERISA; thus, this appeal does not address the effect of any ERISA-related provisions that may govern many other types of retirement benefits.

tion—was plural and not certain at all. The amount of a half portion of Stephen's payroll contributions under the HPOPS plan was readily ascertainable and payable in 1988. The parties did not denominate that amount immediately with the rest of the property settlement; instead, they listed a number of possible sources of employee retirement and other benefits that were not then ascertainable but would flow in the future from contributions made and pension service credit earned during the marriage. Coupled with that language, the term "all sums related to" contemplates a prospective interest in funds flowing from Stephen's employment and contributions during the marriage toward his pension eligibility. The parties do not dispute that a portion of the benefits in the HPOPS retirement plan exists by reason of Stephen's employment during the marriage, specifically, the portion of those benefits "related to" the service credits that he earned during the parties' marriage.

The provision uses the term "vested" to modify a broad array of possible retirement and benefit plans.[2] Reading the modifier "vested" to mean "presently vested" as opposed to the words the decree uses— "vested," "relating to" and "existing by reason of"—employment during the marriage, yields the unreasonable conclusion that the provision conveyed nothing and the modifiers expressly limiting the scope of the entitlement to benefits were wholly unnecessary. *See Plains Exploration,* 473 S.W.3d at 308–09 (rejecting ambiguity argument concerning excluded-assets provi-

sion in agreement conveying leases because proposed alternate interpretation would lead to unreasonable result in which leases were conveyed but their future value was not). The actual limiting provisions in the decree are forward-looking; they contemplate a future contingent interest, one that would become available if and when Stephen began drawing retirement benefits that were traceable to the service credit earned during the marriage, and not a present, nonexistent interest.

The "existing by reason of" clause reinforces the parties' intent to divide the benefits flowing from Winnie's community share of Stephen's service credit earned during the marriage. By including broad, general language encompassing a variety of possible benefit plans, the decree contemplates the allocation of Winnie's proportional future right to vested benefits that "exist[ ] by reason of" the marriage, so long as those benefits can be traced to the contributions made and service credit earned during the marriage.

Finally, the trial court's interpretation ignores the difference between what the agreement conveyed—an interest in a retirement benefit—and an employee payroll contribution. The record shows that during the Howards' marriage, Stephen had an interest in one retirement/pension benefit plan—HPOPS. Under HPOPS, an employee is required to make regular payroll contributions, which are withheld from the employee's earnings. As a practical matter, a right to a refund of the employee's

---

2. We reject Winnie's contention that "vested" modifies only "profit sharing plan" and not the other forms of benefits contained in the list. Like other courts and commentators that have addressed the issue, the Supreme Court of Texas has endorsed application of the grammar rule providing that "the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears."

*Lewis v. Jackson Energy Co-op. Corp.,* 189 S.W.3d 87, 92 (Ky.2005), *quoted with approval in Iliff v. Iliff,* 339 S.W.3d 74, 80 (Tex. 2011). *See generally* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (1st ed.2012) (explaining that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series").

contribution on termination of employment is not a retirement benefit but rather a return of salary earned. The parties agree that no presently vested retirement plan existed at the time of the parties' divorce. Under the HPOPS plan in effect at the time of the divorce, Stephen had not completed the years of service required to become vested. In short, the undisputed evidence showed that Stephen had no vested retirement benefit on the date of divorce. Stephen's proposed interpretation replaces the governing clause with "payroll contributions"—words not found within the parties' agreement.

We hold that the parties' agreement unambiguously conveys a clear and definite legal meaning with respect to the parties' division of retirement benefits; thus, the trial court erred in calculating an amount not based on the parties' agreement. *FPL Energy,* 426 S.W.3d at 63; *Gainous,* 219 S.W.3d at 108.

## CONCLUSION

We hold that the trial court erred in interpreting the divorce decree's provision to exclude retirement benefits traceable to pension service credits earned during the marriage because the decree awards to Winnie one-half of Stephen's vested retirement plan benefits traceable to the community assets earned during the marriage. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.