**Affirmed and Memorandum Opinion filed April 23, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00221-CV

**TOMMY LAYTON SCHMITT, Appellant**

**V.**

**PETRA ULRIKE SCHMITT, Appellee**

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2016-22377**

## M E M O R A N D U M   O P I N I O N

Appellant, Tommy Layton Schmitt, appeals the trial court's enforcement order in favor of Appellee, Petra Ulrike Schmitt. Tommy contends (1) the trial court erroneously ordered him to pay Petra 50% of his retirement benefits because the benefits were "calculated in part on Tommy's separate property"; (2) the trial court erred by "ordering monthly payments that amount to impermissible alimony since Petra does not qualify for spousal maintenance"; and (3) Petra's suit for enforcement

of property division is an impermissible collateral attack on the trial court's final divorce decree. We affirm.

## BACKGROUND

Tommy started his military career with the Air National Guard in May 1969. He joined the United States Army and served on active duty beginning in December 1970. Tommy and Petra married in October 1974. Years later, Tommy left active duty service and started a civil service career working for the government. At some point, Tommy retired. Tommy and Petra divorced in March 2015.

The final divorce decree awarded Petra a portion of Tommy's retirement pension benefits arising out of his "military service in the U.S. Army, as of October 13, 2014, that portion being forty-five percent (45%) of the disposable monthly benefit." Petra was also awarded:

> A portion of Tommy Layton Schmitt's retirement pension benefits in Federal Employees Retirement System (FERS), arising out of Tommy Layton Schmitt's employment with the Federal Administration Agency (FAA), as of October 13, 2014, that portion being fifty percent (50%) of the disposable monthly benefit including, but not limited to, any cost-of-living increases on said account (COLAs), and continuing each year thereafter for so long as Petra Ulrike Schmitt receives this benefit, more specifically described in the 'Order Dividing Federal Employees Retirement System Benefits' signed by the Court on the day this Final Divorce Decree is signed.

The Order Dividing Federal Employees Retirement System Benefits, signed in March 2015, in turn provided as follows:

> Amount of Former Spouse's Benefit (Retired) Employee, Tommy L. Schmitt, is eligible and is receiving retirement benefits under the Civil Service Retirement System based on employment with the United States Government. Former Spouse, Petra Ulrike Schmitt, is entitled to fifty percent (50%) of Tommy L. Schmitt's gross monthly annuity under the Civil Service Retirement System since the date the divorce was granted, that date being March 1, 2015. When COLAs are applied

2

to Tommy L. Schmitt's retirement benefits, the same COLA applies to Petra Ulrike Schmitt's share. The United States Office of Personnel Management is directed to pay Petra Ulrike Schmitt[']s share directly to Petra Ulrike Schmitt.

Neither Petra nor Tommy appealed the final divorce decree. Petra filed an "application for a portion of [Tommy]'s Federal retirement benefit" with the United States Office of Personnel Management (OPM). OPM sent a letter to Petra in July 2015, stating in relevant part:

> We have received and approved your application for a portion of your former spouse's Federal retirement benefit.
>
> This office administers Federal retirement and survivor annuity benefits. We award court ordered retirement and survivor benefits for former spouses as provided for under Section 8345 and 8467 of Title 5 of the United States Code and Part 838 of Title 5 of the Code of Federal Regulations.
>
> By court order your marital share of your former spouse's retirement benefit is 50% of 269 months of service during the marriage divided by 30 years 7 months of Federal service or 36.64% of your former spouse's retirement benefit. The marital shares times your former spouse's gross annuity benefit of $2851 provides for a $1,044.60 monthly payment to you. Your benefit starts 09/01/2015. Please note that each regular payment you and your former spouse receive pays the benefits due for the previous month.
>
> You are due a retroactive payment of $5,223.00 from your former spouse's annuity benefit for the period from 03/01/2015 through 07/30/2015. You can expect to receive this payment, less any applicable Federal taxation, shortly.

Tommy received a substantially similar letter from OPM.

In April 2016, Petra filed an Original Petition for Enforcement of Property Division by Contempt alleging Tommy violated the final divorce decree and the Order Dividing Federal Employees Retirement System Benefits as follows:

VIOLATION NO. 1:

On or about February 1, 2016, the United States Office of Personnel Management paid to Petra Ulrike Schmitt 36.64% of Tommy Layton Schmitt's federal retirement and survivor annuity benefits in the amount of $1,044.80. The balance of 13.36% of his gross federal retirement benefit in the amount of $380.89 is currently due and owing by Respondent. Respondent has failed to pay to PETRA ULRIKE SCHMITT on February 1, 2016, the amount of $380.89 which was paid directly to Respondent by the United States Office of Personnel Management. Respondent as constructive trustee failed to pay to Petra Ulrike Schmitt the amount of $380.89 representing the balance of the 50% of the federal retirement benefits to which she is entitled within three days of his receipt.

Petra alleged the same violations as quoted above for the months of March and April 2016. She requested the trial court enforce the division of property as ordered in the final divorce decree and the Order Dividing Federal Employees Retirement System Benefits. Petra requested the trial court (1) order Tommy to pay her "$1,142.67 for the federal retirement benefit due for the months of February 1, 2016, March 1, 2016, and April 1, 2016;" (2) order that "$380.89 as the balance due to her from [Tommy]'s federal retired pay [representing 13.36% of the 50% retirement benefits awarded to her] be paid via a withholding order to assure future compliance;" and (3) enter a clarifying order "more clearly specifying the duties imposed on" Tommy, if the trial court "finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt."

The trial court held a hearing on December 9, 2016 and signed an enforcement order on December 21, 2016. Tommy then filed a motion for new trial, which the trial court granted on March 21, 2017. Petra filed a motion for reconsideration, and the trial court signed an Order Vacating and Setting aside Order Granting New Trial and Entry of Order Denying Motion for New Trial on May 22, 2017. In its order, the trial court (1) stated that it erroneously granted Tommy's motion for new trial and (2) denied Tommy's motion for new trial. Thereafter, the trial court signed an

4

Enforcement Order on July 28, 2017, which stated among others:

*Enforcement*

*Findings*

The Court finds that, as a matter of law, PETRA SCHMITT is entitled to receive 50% of the entirety of Respondent, TOMMY LAYTON SCHMITT'S federal government retirement. The Court further finds that 36.64% of the amount due to Petitioner is paid via direct payment from the Office of Personnel Management to PETRA SCHMITT. The Court further finds that the balance of 13.36% per month is due and owing by TOMMY LAYTON SCHMITT to PETRA SCHMITT and is to be paid directly to PETRA SCHMITT by TOMMY LAYTON SCHMITT on the first day of each month beginning January 1, 2016.

*Order of the Court*

IT IS THEREFORE ORDERED that TOMMY LAYTON SCHMITT pay to PETRA SCHMITT an amount equal to 13.36% of his federal government retirement pay on the first day of each month beginning January 1, 2016, and continuing monthly and regularly thereafter for as long as TOMMY LAYTON SCHMITT receives his monthly retirement benefit. The Court finds that the current amount due and payable by TOMMY LAYTON SCHMITT to PETRA SCHMITT is $380.89 per month.

*Wage Withholding Order*

IT IS FURTHER ORDERED that all payments equal to 13.36% (currently set at $380.89 per month) of TOMMY LAYTON SCHMITT's federal retirement benefit be paid through a wage withholding order submitted to the Office of Personnel Management and paid directly to PETRA SCHMITT . . . .

Tommy filed a timely appeal from the July 28, 2017 Enforcement Order.

## ANALYSIS

Tommy raises three issues on appeal, arguing the trial court erroneously (1) ordered him to pay Petra 50% of his civil service retirement benefits when the benefits were "calculated in part on Tommy's separate property;" (2) ordered him to

5

make "monthly payments that amount to impermissible alimony since Petra does not qualify for spousal maintenance;" and (3) re-divided assets in the Enforcement Order.

## I.    Standard of Review

We review a trial court's ruling on a post-divorce motion for enforcement or clarification for an abuse of discretion. *Howard v. Howard*, 490 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Id*. at 184.

When, as here, a trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g). The judgment of the trial court must be affirmed if it can be upheld on any legal theory supported by the evidence. *Id*. In cases in which the appellate record includes a reporter's record, the trial court's implied fact findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence supporting them. *Id*. We review implied legal conclusions *de novo*. *Id*.

## II.    Civil Service Retirement Benefits

In his first issue, Tommy contends his "civil retirement benefits ('FERS benefits') are based, in part, on his prior military service, which, as a matter of law, includes a separate property component," namely his five years of military service prior to his marriage to Petra. He contends that, although he worked as a civil servant during his marriage to Petra, the amount of his civil service retirement benefits was

increased by his years of military service, which includes his five years of service pre-marriage. Therefore, Tommy argues the trial court erroneously ordered him "to pay 50% of ALL of Tommy's FERS benefits and not just the community's share" because the trial court's order divested him of his separate property in violation of the Texas Constitution. He argues that the final divorce decree and the Order Dividing Federal Employees Retirement System Benefits "must be interpreted to award Petra 50% of only the community's interest in Tommy's retirement [equaling 36.64% of his entire civil service retirement benefits] and not the entire amount."

Tommy asserts in his third issue that Petra's suit for enforcement of property division was an impermissible collateral attack on the trial court's final divorce decree because Petra's suit asked for a re-division of the civil service retirement benefits to "effectively award to her a part of [Tommy's] separate property." According to Tommy, the trial court did not enforce the property division; instead, it "alter[ed], amend[ed], or chang[ed]" the final divorce decree's award by "redividing assets." Therefore, Tommy asserts the trial court abused its discretion when it ordered him to pay 50% of all of his civil service retirement benefits instead of 50% of the community's share in the benefits. Because Tommy's first and third issues are interrelated, we address them together.

We begin our analysis by determining whether, as Tommy claims, the trial court's Enforcement Order impermissibly amended or changed the substantive property division in the final divorce decree by "redividing assets."

The Family Code authorizes trial courts to enter orders to enforce the division of property made in a divorce decree "to assist in the implementation of or to clarify the prior order." Tex. Fam. Code Ann. § 9.006(a) (Vernon Supp. 2018). In an enforcement order, trial courts may "specify more precisely the manner of effecting the property division previously made or approved if the substantive division of

7

property is not altered or changed." *See id*. § 9.006(b) (Vernon Supp. 2018). An enforcement order that "amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable." *Id*. § 9.007(b) (Vernon Supp. 2018). Thus, attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack. *See Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex. 2003) (holding a trial court's correct construction of a divorce decree's award "does not impermissibly 'amend, modify, alter, or change the division of property made or approved in the decree of divorce'" (quoting Tex. Fam. Code Ann § 9.007(a))).

We interpret divorce decree language by applying the general rules regarding construction of judgments. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009); *see also Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). We construe the divorce decree as a whole to harmonize and give effect to the entire decree. *Hagen*, 282 S.W.3d at 902; *see also Shanks*, 110 S.W.3d at 447. If the divorce decree, when read as a whole, is unambiguous as to the property's disposition, we "'must effectuate the order in light of the literal language used.'" *Shanks*, 110 S.W.3d at 447 (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997)). If the decree is ambiguous, we must review the record along with the decree to interpret the judgment. *Hagen*, 282 S.W.3d at 902; *see also Shanks*, 110 S.W.3d at 447. Whether a divorce decree is ambiguous is a question of law. *Hagen*, 282 S.W.3d at 902; *see also Shanks*, 110 S.W.3d at 447.

We reject Tommy's assertion that the final divorce decree and the Order Dividing Federal Employees Retirement System Benefits "must be interpreted to award Petra 50% of only the community's interest in Tommy's retirement and not the entire amount." There is no language in the divorce decree or the Order Dividing

8

Federal Employees Retirement System Benefits awarding Petra 50% of the "community's share" or the "community's interest" in Tommy's retirement benefits. Instead, the plain language unambiguously awards Petra 50% of all the retirement benefits; it clearly provides for "fifty percent (50%) of the disposable monthly benefit" and, "more specifically described in the 'Order Dividing Federal Employees Retirement System Benefits,'" awards Petra 50% of Tommy's "gross monthly annuity under the Civil Service Retirement System."

Tommy notes in his brief that, "when, as here, a retirement plan is fully matured at the time of divorce, Texas courts apply a formula to determine the extent of the community estate's interest in the retired pay" and cites to *Taggert v. Taggert*, 552 S.W.2d 422, 424 (Tex. 1977). *Taggert* provided trial courts the formula to use in determining the community interest in retirement benefits and the non-employee spouse's share of that interest. *Id*.; *Shanks*, 110 S.W.3d at 446. Courts were supposed to use the following fraction to apportion the community interest: the number of months married under the plan divided by the total number of months employed under the plan at the time of retirement. *See Taggert*, 552 S.W.2d at 424; *Shanks*, 110 S.W.3d at 446. "That fraction was multiplied by the non-employee spouse's 'just and right' share in the community interest as determined by the trial court (often fifty percent) and then multiplied by the value of the benefits received by the employee spouse at retirement." *Shanks*, 110 S.W.3d at 446.

However, the Schmitts' final divorce decree does not set out a specific *Taggert*-like formula to be used in calculating Petra's interest.[1] Rather, the trial court awarded Petra 50% of all of Tommy's retirement benefits without the qualification Tommy now claims is required by *Taggert*. The language here unequivocally

[1] Nor do we express an opinion on whether the trial court in this case should have employed the *Taggert* formula to divide Tommy's retirement benefits.

9

awards Petra one half of Tommy's total civil service retirement benefits, even if the trial court's award may have included Tommy's separate property.[2] *See Reiss*, 118 S.W.3d at 442 (holding that divorce decree, which provided that non-employee spouse "shall receive fifty percent (50%) of such retirement or pension benefit to which [employee spouse] is entitled" unambiguously awarded non-employee spouse half of total retirement benefits and not just half of community property portion of those benefits, despite divorce decree's express recitation elsewhere that pension benefits were "community property" and that court was dividing "community property"); *Shanks*, 110 S.W.3d at 447-48 (in finding that the divorce decree, which provided that non-employee spouse was to receive "a 'pro rata' interest . . . of any and all sums received or paid to [employee spouse] from such pension or retirement plan," unambiguously awarded non-employee spouse half of total retirement benefits instead of half of community property portion of those benefits, the court reasoned that "the trial court awarded [non-employee spouse] an interest in all sums received under such *plan*, not an interest of presently accrued benefits under such plan") (emphasis in original); *Gainous*, 219 S.W.3d at 110-11 (concluding that decree, which stated that non-employee spouse should receive "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of [employee spouse]," unambiguously awarded non-employee spouse "half of *all* of [employee spouse]'s benefits in the Fund, not just those that could be considered community property") (emphasis in original).

The final divorce decree in this case is unambiguous, and the trial court correctly construed it to award Petra 50% of Tommy's total civil service retirement

---

[2] We do not determine whether Tommy's civil service retirement benefits had a separate property component, as Tommy alleges, because it is not necessary for the disposition in this case. Whether the trial court erroneously applied the law and divested Tommy of his separate property does not alter the final divorce decree's plain language. *See Shanks*, 110 S.W.2d at 448-49.

benefits. Because the trial court's Enforcement Order is consistent with the final divorce decree's property division, the trial court acted within its discretion when it entered the Enforcement Order.

Tommy correctly asserts that Texas law prohibits courts from divesting spouses of their separate property. *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139-40 (Tex. 1977). But Tommy's complaint that the trial court erroneously ordered him to pay more than "the community's share of his FERS benefits" to Petra and thereby "unconstitutionally divested [him] of his separate property" is without recourse here, even if it were meritorious. The Enforcement Order is consistent with the final divorce decree's division of property. Assuming *arguendo* that there is an incorrect characterization of property in the final divorce decree and a part of Tommy's civil service retirement benefits contains a separate property component, any error in awarding Petra that separate property had to be raised by Tommy in a direct appeal; in other words, Tommy's remedy for any substantive error of law was to appeal the final divorce decree. *See Reiss*, 118 S.W.3d at 442 ("And though a trial court's incorrect characterization of property upon divorce that affects the 'just and right' division of the community estate is grounds for reversal on appeal, . . . [employee spouse] did not appeal the judgment in this case."); *Shanks*, 110 S.W.3d at 449 ("[Employee spouse]'s remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment."); *Gainous*, 219 S.W.3d at 110 ("A division awarding a spouse the other spouse's separate property is unconstitutional and erroneous . . . . That mistake could have been corrected in a direct appeal, but it was not; it cannot be corrected 10 years after the fact."). Tommy did not appeal the divorce decree; any allegedly incorrect characterization and division of property cannot now be attacked by challenging the Enforcement Order which is consistent with the final divorce decree. *See Reiss*, 118

11

S.W.3d at 442-43; *Shanks*, 110 S.W.3d at 449; *Gainous*, 219 S.W.3d at110.

We conclude the trial court correctly construed the final divorce decree to award Petra 50% of all of Tommy's civil service retirement benefits. The Enforcement Order therefore serves its intended purpose of enforcing and implementing the division of Tommy's retirement benefits set out in the final divorce decree; the Enforcement Order does not impermissibly "amend, modify, alter, or change the division of property made or approved in the decree of divorce." *See* Tex. Fam. Code Ann. § 9.006(a), (b), § 9.007(a) (Vernon Supp. 2018). Because the Enforcement Order is consistent with the final divorce decree's unambiguous property division, the trial court acted within its discretion when it entered the Enforcement Order. Accordingly, we overrule Tommy's first and third issues.

Tommy asserts in his second issue that the trial court erroneously ordered him to make "monthly payments that amount to impermissible alimony." He claims the trial court is "forbidden from ordering Tommy to continue to support Petra post-divorce" from his separate property.

Tommy provides no authority to support his contention that "any award to Petra for payments that amount to 13.36% so Petra receives 50% of the total retirement pay-out, constitutes payments of alimony." Moreover, Tommy's argument is without merit in light of our analysis and disposition of his first and third issues. We already have determined the Enforcement Order requiring Tommy to make payments to Petra so that she receives 50% of his total civil service retirement benefits is consistent with the final divorce decree, and the trial court therefore did not abuse its discretion in entering the Enforcement Order. Accordingly, we overrule Tommy's second issue.

12

**CONCLUSION**

We affirm the trial court's July 28, 2017 Enforcement Order.

/s/  Meagan Hassan
    Justices

Panel consist of Justices Christopher, Zimmerer, and Hassan.

13