**Opinion issued January 16, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00803-CV

———————————

### PAMELA K. PAREDEZ, Appellant

### V.

### DARREN J. HUSSEY, Appellee

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-25242**

---

## MEMORANDUM OPINION

Pamela Paredez appeals the trial court's denial of her motion to sign a Qualified Domestic Relations Order (QDRO) for a defined contribution plan owned by her former husband, Darren Hussey. In six issues, Paredez contends that the parties' divorce decree entitles her to QDROs awarding her half of the funds in

Hussey's defined contribution, stock option, profit-sharing, bonus, and employer-based savings retirement plans from the date of their divorce until the date Hussey retires.

We affirm.

**Background**

After almost thirteen years of marriage, Hussey and Paredez divorced on March 20, 1995. Although they have now been divorced for almost 25 years, Hussey and Paredez have spent the past several years in litigation over Paredez's claim that the parties' divorce decree entitles her to receive half of each of Hussey's retirement savings plans through the last date of his "past, present, or future employment," including contributions he and his employer made to those plans after the parties' divorce in 1995. This appeal centers around Hussey's defined contribution plan, the Shell Provident Fund.

In the portion of the parties' divorce decree titled "Division of the Marital Estate," the trial court ordered "that the estate of the parties is divided" to award Paredez:

> Fifty (50%) percent of any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Respondent's past, present, or future employment, including without limitation, the Respondent's Retirement

2

Fund, Provident Fund, and SPIF Fund with Shell Oil Company per Qualified Domestic Relations Orders; however, excluding loans against the SPIF in arriving at the 50% interest in the SPIF Fund.

In accordance with this provision of the decree, on June 15, 1995, the trial court signed a QDRO awarding Paredez fifty percent of the funds in Hussey's Shell Provident Fund as of March 20, 1995:[1]

5. The Court finds that the total community property interest of [Hussey] and [Paredez] in the Shell Provident Fund (hereinafter the Plan), to be the total sum of all contributions, together with interest and earnings thereon, which were made or accrued by or on behalf of [Hussey] into any and all accounts of the Plan.

6. As a part of a just and right division of the estate of the parties, the Court awards, assigns and grants to [Paredez], fifty percent (50%) of all accounts of [Hussey] that make up the Shell Provident Fund as valued on March 20, 1995, said date being the date of divorce, together with all stocks, splits, dividends and earnings thereon, to date of distribution.

The QDRO stated that it "shall become an integral part" of the divorce decree. And it provided:

10. Except as specifically awarded to [Paredez] herein, [Paredez] is divested of all right, title, and interest in and to any balance remaining in any account of the Shell Provident Fund covering [Hussey].

11. When full payments to [Paredez] of the respective benefits assigned [Paredez] under this Order have been made, the Shell Provident Fund shall be discharged from its respective obligations to [Paredez].

---

[1] On the same day, the trial court also signed QDROs for Hussey's Shell Pension Plan and Shell Pay Deferral Investment Fund.

The QDRO was not appealed. Nor was the divorce decree of which the QDRO was expressly made an integral part appealed.

It is undisputed that Paredez received the funds from the June 15, 1995 Shell Provident Fund QDRO—in an amount of roughly $50,000.

Over the next twenty years, the value of Hussey's Shell Provident Fund increased significantly, due in part to his own and his employer's contributions.

On September 26, 2014, Paredez filed a petition to enter a QDRO for the Shell Pension Plan. The trial court signed her proposed QDRO at a hearing on October 28, 2015, which Hussey did not attend.[2]

On November 2, 2015, Paredez filed notice of a December 1, 2015 hearing "on petitioner's petition to enter QDRO." At the hearing, the trial court signed a QDRO for the Shell Provident Fund, stating a valuation date of July 15, 2015 and an amount of $370.092.00. Hussey states that he was not given notice of the hearing and that neither a petition for entry of a Shell Provident Fund QDRO, nor the QDRO that the trial court ultimately signed, was on file with the court before the December 1, 2015 hearing.

Paredez was unable to obtain the funds awarded to her by the December 1, 2015 Shell Provident Fund QDRO. On April 7, 2016, she tried again, filing an "amended QDRO" for the fund that indicated a valuation date of July 15, 2015,

_____

[2] Hussey states that he did not receive notice of the October 28, 2015 hearing.

4

and an amount of $370.092.00. Although the appellate record contains neither a motion to enter this QDRO nor a hearing notice, it appears from a May 11, 2016 docket entry that the trial court refused to sign this QDRO based on insufficient notice to Hussey.

A month later, on June 15, 2016, Paredez filed a "petition to enter amended QDRO" for the Shell Provident Fund. Again, the attached proposed QDRO stated a valuation date of July 15, 2015, and an amount of $370.092.00. The record reflects neither a hearing nor a ruling on this petition.

On April 13, 2017, Hussey filed a petition for bill of review of the divorce decree, asking the trial court to set aside and reform the portions of the decree dividing his retirement benefits to clarify that they are to be divided as they existed on the day of the divorce. He alleged that he was not given notice of submission of the December 1, 2015 Shell Provident Fund QDRO, and he argued that the trial court did not have jurisdiction to sign the 2015 QDRO, which conflicted with both the divorce decree and the 1995 QDRO for the Shell Provident Fund.

On June 15, 2017, Paredez filed a "second amended petition to enter QDRO" and attached a proposed Shell Provident Fund QDRO which appears to substantially conform with the one she proposed in her motion filed exactly one year earlier.

At a November 7, 2017 hearing, the trial court considered both Hussey's bill of review and Paredez's second amended petition to enter the Shell Provident Fund QDRO. Paredez and Hussey each testified about their respective understandings and intent at the time of their divorce regarding how the decree was to divide Hussey's retirement funds. At the close of the hearing, the trial court orally granted the bill of review and denied Paredez's second amended petition to enter the Shell Provident Fund QDRO. And on December 8, 2017, the trial court signed an order granting the bill of review and modifying the divorce decree accordingly. The order also set aside the October 18, 2015 Shell Pension Plan QDRO. On December 15, the trial court signed a reformed divorce decree and a new Shell Pension Plan QDRO that conformed with the language in the reformed divorce decree.

Paredez filed a "response," which was in effect a motion for reconsideration of the trial court's order granting the bill of review and related orders, arguing that the bill of review was untimely filed. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015) ("Unless otherwise specified by statute, equitable bills of review carry a four-year statute of limitations.").

Five days after it had signed the reformed divorce decree and new Shell Pension Plan QDRO, the trial court signed a "Court's Rendition," denying Hussey's bill of review, setting aside the reformed divorce decree, reinstating the original March 20, 1995 divorce decree, and setting aside the Shell Pension Plan

QDRO it had signed on December 15, 2017 to conform it with the reformed decree, and denying all other relief.

On March 26, 2018, Paredez filed another proposed QDRO for the Shell Provident Fund. While the appellate record does not contain a motion to enter this QDRO or a hearing notice, the trial court's docket entry for April 4, 2018 states that it declined to enter the QDRO because it was missing a signature.

Shortly thereafter, on April 24, 2018, Paredez attempted once more to obtain half of the post-divorce value of the Shell Provident Fund—which by this time had grown to be worth approximately one million dollars—by filing a two-sentence "Motion to Sign QDRO," attaching a proposed Shell Provident Fund QDRO, and noticing a May 23 hearing.[3] The trial court's docket entry for May 23 notes that service of the motion was defective—although the proposed QDRO was filed with the clerk, it was not served on Hussey. The parties and trial court agreed to reset the matter for hearing on June 13.

At the June 13, 2018 hearing, Hussey's counsel argued that the trial court's 1995 Shell Provident Fund QDRO divested Paredez of any and all interest in the Shell Provident Fund. The trial court asked whether the 1995 QDRO was "still in

---

[3]  Paredez's motion states, in its entirety: "This Motion to Sign Qualified Domestic Relation[s] Order is brought by Pamela K. Paredez, moving the Court to sign the QDRO in the form filed as an Exhibit with this motion, which was also filed in this Court on March 26, 2018. Movant prays that the Court sign said QDRO in the form filed as an Exhibit with this motion, which is the same as that filed on March 26, 2018."

7

effect," and Hussey's counsel answered that it was and that Paredez had already received the funds from that QDRO.

At the close of the hearing, the trial court signed an order denying Paredez's motion to enter the proposed Shell Provident Fund QDRO. The order stated that the divorce decree awarded Paredez half of the funds in the Shell Provident Fund as of the date of divorce, the 1995 QDRO effected this award, and Paredez was not entitled to any further distributions from the Shell Provident Fund.

Paredez filed a motion for new trial, in which she argued that the trial court's denial of her motion to sign the QDRO "essentially altered the property division awarded in the divorce decree." Hussey responded, arguing that the trial court's ruling was consistent with the divorce decree and the 1995 Shell Provident Fund QDRO, which was "signed by all parties involved" and "fully disposed of [Paredez]'s interest" in the fund. After a hearing, the trial court denied Paredez's motion for new trial.

## Post-Divorce Orders Awarding Retirement Funds

**A.      Standard of Review**

A QDRO is a species of post-divorce enforcement or clarification order. *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). We review a trial court's ruling on a post-divorce motion to enter a QDRO for an abuse of discretion. *See Howard v. Howard*, 490 S.W.3d 179, 183–

84 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (applying abuse of discretion standard to review of QDRO). A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Id.* at 184.

## B.     The Shell Provident Fund

In her first and second issues, Paredez argues that the trial court's refusal to sign the QDRO impermissibly altered the property division in the divorce decree.[4] According to Paredez, the divorce decree unambiguously awarded her half of Hussey's Shell Provident Fund "through the last date of his employment."

Hussey argues that the trial court did not err in denying Paredez's motion because her proposed QDRO did not comport with, and was therefore an impermissible collateral attack on, the 1995 Shell Provident Fund QDRO. We agree. Moreover, here, the 1995 QDRO was made an integral part of the divorce decree by its plan language.

The 1995 QDRO expressly awarded Paredez "fifty percent (50%) of all accounts of [Hussey] that make up the Shell Provident Fund as valued on March 20, 1995." It further recited that, "[e]xcept as specifically awarded to [Paredez]

---

[4]     Paredez phrases her issues as questions. Her first issue asks whether the trial court erred in denying her motion to sign the QDRO, and her second asks whether she has the right to a QDRO awarding her half of the Shell Provident Fund.

herein, [Paredez] is divested of all right, title, and interest in and to any balance remaining in any account of the Shell Provident Fund covering [Hussey]." And it provided "under this Order" that when full payment was made to Paredez, "the Shell Provident Fund shall be discharged from its respective obligations to [Paredez]." Neither the divorce decree nor the QDRO was appealed.

Family Code section 9.007(a)–(b) provides:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.
>
> (b) An order under this section that amends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment *is beyond the power of the divorce court* and is unenforceable.

TEX. FAM. CODE ANN. § 9.007(a)–(b) (emphasis added); *see also Gainous*, 219 S.W.3d at 107 ("[A]s with any post-divorce enforcement or clarification order, a QDRO may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment.").

A QDRO is a final, appealable order. *Gainous*, 219 S.W.3d at 104 (citing *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003)). Res judicata applies to final divorce decrees and, "under the same logic," to final post-divorce orders such as QDROs. *See Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas

10

2014, no pet.) (quoting *Gainous*, 219 S.W.3d at 105). Thus, if a party fails to perfect an appeal of a QDRO, res judicata bars a subsequent collateral attack on the QDRO. *See id.* A collateral attack seeks to avoid the effect of a judgment or final order, but it does so indirectly through a separate proceeding. *See Gainous*, 219 S.W.3d at 105. Paredez's motion to enter the proposed QDRO, filed over two decades after the trial court's plenary power over the divorce decree and 1995 Shell Provident Fund QDRO expressly made a part of it had expired, was just such an attack.

The QDRO Paredez sought to have entered entitled her to "all amounts . . . contributed to the Plan on behalf of [Hussey] in the past, present and future." The 1995 QDRO, on the other hand, which by its terms was made an integral part of the divorce decree, stated that Paredez was only entitled to half of Hussey's Shell Provident Fund "as valued on March 20, 1995," that she was "divested of all right, title, and interest in and to any balance remaining" in the fund after that date, and that, once she receives payment under the order, "the Shell Provident Fund shall be discharged from its respective obligations to [Paredez]." It is undisputed that Paredez received those funds in 1995. Because Paredez's proposed QDRO sought to avoid the effect of the 1995 QDRO and the divorce decree into which it was incorporated, it constituted a collateral attack on both. *See Beshears*, 423 S.W.3d at 500 (holding that res judicata bars collateral attack on

11

divorce decrees and QDROs); *see also Shearn v. Brinton-Shearn*, No. 01-17-00222-CV, 2018 WL 6318450, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 4, 2018, no pet.) (mem. op.) ("Seeking an order that alters or modifies a divorce decree's property division constitutes an impermissible collateral attack.").

We overrule Paredez's first and second issues.

## C.     The Stock Option, Profit-Sharing, Bonus, and Employer-Based Savings Plans

In her third through sixth issues, Paredez argues that she is entitled to QDROs awarding her half of Hussey's stock option, profit-sharing, bonus, and employer-based savings plans through the last date of Hussey's past, present and future employment. Our holding that res judicata bars Paredez from obtaining QDROs that collaterally attack the divorce decree's property division applies equally to all of Hussey's retirement benefits. We therefore overrule Paredez's third through sixth issues.

## Conclusion

We affirm the trial court's order denying Paredez's motion to sign the Shell Provident Fund QDRO.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.