**Opinion filed October 5, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00201-CV

_____

## DIANE LEE, Appellant

## V.

## BOBBY HOOVER, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV35770**

## M E M O R A N D U M   O P I N I O N

Appellant, Diane Lee, appeals the trial court's order to clarify and enforce a final decree of divorce between herself and Appellee, Bobby Hoover. In two issues, Diane asserts that (1) the trial court's clarification is void because it substantively changed the division of property in the divorce decree; and (2) the evidence is legally and factually insufficient to support the trial court's award of attorney's fees. We

affirm the trial court's clarification order, and we reverse and remand its attorney's fees determination for further consideration.

## I. *Factual Background*

Prior to the parties' marriage on September 30, 2011, Bobby maintained a 401(k) account with his employer, United Parcel Service, which had a balance of $244,277.92. During their marriage, the parties largely stopped contributing to the 401(k) account—they contributed a total of only $33,000.

Before their divorce was granted, the parties mediated their marital disputes, and they executed a mediated settlement agreement (MSA). The MSA also incorporated a spreadsheet that divided the parties' marital estate and listed a value for each community asset. The spreadsheet listed Bobby's 401(k) account with UPS as follows:

| BANK ACCOUNTS/RETIREMENT ACCOUNTS | | | | | | |
|---|---|---|---|---|---|---|
| 7 | 401(K) - UPS   (New Current Balance????) ($92,916.50) - (1/2 = $46,458.25) | | C/S | $ 46,458.25 | $ | 46,458.25 |

As shown above, notwithstanding the notation as to the account's "new current balance," the spreadsheet excerpt indicates that both Bobby and Diane would receive one-half of $92,916.50, or $46,458.25 each. Also, the spreadsheet's 401(k) entry bears a "C/S" designation; the majority of the entries in the spreadsheet are designated as either "C" or "S," presumably to specify that a designated entry refers to either a community or separate property asset.

The trial court signed an agreed final decree of divorce on May 17, 2021. The decree incorporates the MSA "by reference as part of this decree as if it were recited herein verbatim" and orders the parties "to do all things necessary to effectuate the [MSA]." The decree awards Bobby the entire 401(k) account balance "as reflected on Exhibit A," except for the portion "awarded to [Diane] in this decree." Exhibit A is the same spreadsheet that was attached to the MSA. The decree also awards Diane an equalization judgment of $153,541.75.

2

The trial court later signed a qualified domestic relations order (QDRO) in which it ordered the division of Bobby's UPS 401(k) account. The language in the QDRO is not consistent with the language in the decree. Where the decree awards Diane 50% of the account's "community interest" that accrued during the marriage, the QDRO awards her 50% of Bobby's "total vested account balance [that] accrued" during that same period. The QDRO contains no language that limits the division of the account to the parties' community interest.

The 401(k) plan administrator approved the QDRO and transferred one-half of the total vested account balance accrued during the parties' marriage—$390,392.18—to Diane. After this, Bobby filed a bill of review action to challenge the QDRO. He also filed a petition that sought (1) the enforcement of the decree, (2) a clarification of any provisions in the decree deemed to be ambiguous, (3) the entry of a modified QDRO to comport with the decree's provisions, and (4) attorney's fees.

The parties proceeded to a hearing on Bobby's requests for relief. Diane denied that she intended for the spreadsheet to establish the amount of Bobby's 401(k) that would be awarded to her. She claimed that the spreadsheet amounts were simply "alleged and proposed."

Bobby testified that, in signing and agreeing to the terms specified in the MSA, he and Diane relied on a calculation of the community interest portion of the 401(k) that was provided by Mark Petersen, a CPA and certified financial planner. According to Bobby, he and Diane agreed to divide the account's community portion as Petersen had calculated it. Bobby asserted that Petersen provided a preliminary calculation for purposes of mediation, then refined that calculation before the trial.

Bobby offered an affidavit from Petersen concerning the community portion of the 401(k). Over Diane's hearsay objection, the trial court admitted Petersen's affidavit pursuant to the Texas Supreme Court's emergency rules relating to the

3

COVID-19 pandemic. *See Fifty-First Emergency Order Regarding the COVID-19 State of Disaster*, 660 S.W.3d 98, 99 (Tex. 2022). Diane did not challenge the basis for the emergency rules or assert any other objection to the admission of the affidavit.

In his affidavit, Petersen stated that he calculated the community portion of the 401(k) by reviewing the account's quarterly statements that were provided to the parties during the duration of their marriage and then tracking the actual index performances for each of the five investments in the plan. Based on that data, Petersen calculated the community portion of the account to be $99,426.40. Petersen attached two spreadsheets to his affidavit to support his tracking and resulting calculations.

Finally, Bobby's lawyer testified that he had spent ten billable hours "in prosecuting this matter here for today" at the rate of $250 an hour, and that the total amount of $2,500 was a reasonable and customary attorney's fee.

The trial court signed an order in which it: (1) found Diane in contempt for multiple violations of the final decree that were unrelated to the parties' 401(k) dispute; (2) clarified the decree to recite that Petersen's affidavit "sets forth the propose [sic] calculations and amount" to be awarded to Diane from the 401(k); (3) ordered Diane to return the funds already conveyed to her; (4) recited that it would sign an amended QDRO that tracked the clarified decree and that would award Diane "one-half of the community interest calculated" from the date of marriage to the date of divorce; and (5) awarded Bobby attorney's fees in the sum of $2,500. The trial court also issued findings of fact and conclusions of law in support of its order. This appeal followed.

## II. *Standard of Review*

A trial court's ruling on a post-divorce motion for enforcement or clarification of a final divorce decree is reviewed under an abuse of discretion standard. *Moore v. Moore*, 568 S.W.3d 725, 729 (Tex. App.—Eastland 2019, no pet.). A trial court

abuses its discretion when it acts in an arbitrary and unreasonable manner or without reference to any guiding rules or principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

In family law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to the assessment of whether the trial court abused its discretion. *Id.* (citing *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.)).

To determine whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). The applicable sufficiency review comes into play under the first prong. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support its decision. *Id.*

We will sustain a legal sufficiency challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The test for legal sufficiency is always "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

In a factual sufficiency review, we examine all of the evidence in the record—both supporting and contrary to the trial court's judgment—and reverse only if the judgment is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.3d 770, 772 (Tex. 1996).

In any sufficiency review, the factfinder remains the sole judge of witness credibility and evidentiary weight. *City of Keller*, 168 S.W.3d at 819. We do not substitute our judgment for that of the factfinder. *Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied) (citing *F.D.I.C. v. F & A Equip. Leasing*, 854 S.W.2d 681, 684–85 (Tex. App.—Dallas 1993, no writ)). The factfinder may choose to believe some, all, or none of a witness's testimony. *See Glenn v. Glenn*, 659 S.W.3d 212, 219 (Tex. App.—El Paso 2022, pet. denied).

III. *Analysis*

A. *The Trial Court's Clarification Order is not Void*

In her first issue, Diane asserts that the trial court's clarification order is void because it substantively alters the division of property as set forth in the final decree of divorce. Bobby replies that the decree is ambiguous as to the division of property, which necessitates a clarification. He further contends that because (1) the parties agreed to abide by the calculations made by Petersen and (2) Diane waived her evidentiary objections, the trial court's clarification order is supported by legally and factually sufficient evidence. We agree.

A trial court that renders a divorce decree generally retains the power to enforce or clarify the property division that is made or approved in the decree. TEX. FAM. CODE. ANN. §§ 9.002, 9.006(a), 9.008 (West 2020). After its plenary power expires, a trial court may not alter, amend, or modify the substantive division of property that is recited in the decree. *Id.* § 9.007(a), (b). Thus, an order that amends, modifies, alters, or changes the actual, substantive division of property that is made or approved in a final decree of divorce is beyond the jurisdiction of the trial

6

court and is void. *Id.* § 9.007(b); *DeGroot v. DeGroot*, 260 S.W.3d 658, 663 (Tex. App.—Dallas 2008, no pet.). However, the trial court may enter a clarifying order to enforce compliance with the original division of the parties' property. FAM. § 9.008(b).

A QDRO is a species of post-divorce enforcement order. *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). It creates or recognizes an alternative right for the payee to receive benefits that are payable to a participant under a retirement plan. *In re Marriage of Denning and Stokes*, 651 S.W.3d 60, 63 (Tex. App.—Houston [14th Dist.] 2021, no pet.). As with any post-divorce enforcement or clarification order, a QDRO may not amend, alter, or change the division of property that is made or approved in the decree of divorce. *Id.* (citing *Quijano v. Quijano*, 347 S.W.3d 345, 353 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). But a QDRO may more precisely specify the manner in which the property division that was previously ordered can be carried out, as long as the substantive division of the property is not altered. *Id.* (citing *Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018)).

"A QDRO, like a divorce decree, is a final, appealable order." *Id.* (citing *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.)); *see Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003). Res judicata applies to final post-divorce orders, but it does not bar a collateral attack on a void QDRO. *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003); *Gainous*, 219 S.W.3d at 105. A QDRO is void if it fails to comport with the decree's award of property and, consequently, *substantively* alters the property division. *See, e.g., Beshears*, 423 S.W.3d at 504 (QDRO void as to surviving spouse issue). In such circumstances, the trial court may amend the QDRO to conform it to the provisions of the decree. *See id.*; *see also Gainous*, 219 S.W.3d at 106–07.

An agreed property division that is incorporated into a divorce decree is treated as a contract and governed by the rules of construction applicable to ordinary contracts, not by the law of judgments. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Gates v. Gates*, No. 11-18-00139-CV, 2020 WL 3635241, at *3 (Tex. App.—Eastland June 30, 2020, no pet.) (mem. op.). Our primary concern in interpreting a contract is to ascertain the intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We construe the decree as a whole to harmonize and give effect to all of its terms. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

If, when read as a whole, the divorce decree's terms are unambiguous, we must give effect to the order in light of the literal language used. *In re C.P.Y.*, 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.). But if the terms of the decree are ambiguous, we must review the record along with the decree to interpret the judgment. *Shanks*, 110 S.W.3d at 447. A contract is ambiguous if its meaning is uncertain or is reasonably susceptible to more than one interpretation. *See Coker*, 650 S.W.2d at 393. Whether a divorce decree is ambiguous is a question of law that we review de novo. *See id.* at 394. If an ambiguity exists, contract law provides that the property settlement agreement may be reformed to correct the mutual mistake of the parties or to reflect the true intent of the parties. *Allen*, 717 S.W.2d at 313. As such, a clarification proceeding may be used to reform a property settlement agreement that is incorporated into an agreed divorce decree. *See id.*; *Gates*, 2020 WL 3635241, at *3.

We conclude that the decree is ambiguous as to the division of the 401(k) account. The provision that addresses Diane's share of the 401(k) account awards her "one-half of the community interest" that accrued during the marriage. The provision pertaining to Bobby's share of the account awards him the entire account

balance except for the portion awarded to Diane. The provision concerning Bobby's share also recites that his portion is awarded "as reflected on Exhibit A" and expressly recites that Exhibit A is incorporated into the decree "for all purposes." Exhibit A—the spreadsheet—states that each party is to receive $46,458.25. The decree also explicitly incorporates the MSA, to which the same spreadsheet is attached, and orders the parties to do whatever is necessary to effectuate the agreement. Diane even concedes that the decree "may be" ambiguous (if only as to Bobby's award) as a result of the spreadsheet.

By attaching the spreadsheet—and incorporating the MSA—the decree renders itself susceptible to competing interpretations. For example, the decree may be interpreted to divide (1) the entire balance of the 401(k) as of the date of divorce, or (2) only a community interest portion of approximately $96,000. Or the decree may be interpreted to divide the account on a percentage basis, or to award each party the amount specified in the spreadsheet. Because the decree is reasonably susceptible to multiple interpretations, it is ambiguous as to the division of the 401(k) account proceeds. Therefore, the trial court could properly exercise its discretion to clarify the decree's provisions with respect to the division of property, and it did so without making any substantive change in the property's division.

Diane contends that, even if the decree is ambiguous, the trial court's clarification is not supported by legally and factually sufficient evidence. We disagree. The record shows that there is legally and factually sufficient evidence to support (1) the trial court's finding that the parties agreed to use Petersen's valuation of the community interest portion of Bobby's 401(k) account, and (2) the trial court's clarification that Diane's share—one-half of the community interest portion—is $49,713.20.

The crux of the evidence that supports the trial court's determinations and clarification of the decree is Petersen's affidavit, which includes his calculations of

9

the community interest portion of Bobby's 401(k) account.  Diane argues that the trial court should have sustained her objections to the admissibility of Petersen's affidavit and to Petersen's methodology.  However, we conclude that Diane waived her challenges both to the admissibility of the affidavit and to Petersen's methodology in calculating the value of the community interest portion of the account.  Moreover, the evidence supports the trial court's conclusion that Diane and Bobby agreed to use Petersen's valuation in their agreed property division.  For these reasons, as we further explain below, we conclude that the evidence is legally and factually sufficient to support the trial court's clarification of the decree.

### 1. *Diane Waived Her Evidentiary Complaints*

To preserve a complaint for appellate review, the complaining party must present a timely objection or motion to the trial court which states the specific grounds for the desired ruling, if they are not apparent from the context.  TEX. R. APP. P. 33.1(a)(1)(A); *see also* TEX. R. EVID. 103(a).  Further, the argument presented on appeal must comport with the argument made in the trial court.  *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 159 (Tex. App.—Austin 2017, pet. denied) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)).

When Bobby offered Petersen's affidavit, Diane objected to its admission on the basis that it constituted hearsay.  The trial court overruled Diane's objection and explained that Petersen's affidavit was admissible under the Texas Supreme Court's Emergency Orders which, at the time, permitted Texas courts to consider as evidence sworn out-of-court statements.[1]

---

[1]*See Fifty-First Emergency Order Regarding the COVID-19 State of Disaster*, 660 S.W.3d 98, 99 (Tex. 2022) ("Subject to constitutional limitations and review for abuse of discretion, all courts in Texas

Diane neither objected to the Emergency Orders themselves nor specified that her hearsay objection was to the spreadsheet attached to Petersen's affidavit (although she now makes this argument and distinction in her appellate brief). Diane's grounds for the exclusion of the spreadsheet would have been, as she explains in her brief, that it did not fall within an exception to the hearsay rule, specifically the exception that applies to a Record of a Regularly Conducted Activity under Rule 803 of the Texas Rules of Evidence. TEX. R. EVID. 803(6). But Diane did not articulate the basis to the trial court that she now advances on appeal and, when the trial court explained its reasoning for overruling Diane's objection (the supreme court's emergency orders), she did not then clarify that her objection was specifically directed to the spreadsheet's admissibility, rather than to the admissibility of the affidavit generally. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("[T]he cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it.").

We conclude that Diane's argument on appeal does not comport with the objection that she made in the trial court because her objection lacked the required specificity to apprise the trial court of the grounds for her objection. Further, she had the opportunity to make a proper objection. Because her objection lacked sufficient specificity and her argument on appeal does not comport with her objection made to the trial court, Diane has waived this complaint. *See Arkoma Basin Expl. Co.*, 249 S.W.3d at 387; *Banda*, 955 S.W.2d at 272.

Furthermore, even if Diane's complaint was preserved, Petersen's expert opinions in his affidavit were admissible under both the Emergency Orders and

---

may in any case, civil or criminal, without a participant's consent . . . consider as evidence sworn statements made out of court . . . .").

Rules 702 and 703 of the Texas Rules of Evidence, which govern the admission of expert testimony. *See* TEX. R. EVID. 702, 703. When an exhibit "contains both admissible and inadmissible evidence, the party objecting to the evidence must identify the objectionable portions of the exhibit." *Sunl Grp., Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co., Ltd.*, 394 S.W.3d 812, 816 (Tex. App.—Dallas 2013, no pet.); *see Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 126 (Tex. App.—Eastland 2001, pet. denied). "A general objection to evidence as a whole, which does not point out specifically the portion objected to, is properly overruled if any part of [the offered] evidence is admissible." *Sunl Grp.*, 394 S.W.3d at 816 (citing *Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981)). Because at least a portion of Petersen's affidavit was admissible (and we do not hold that any part of the exhibit was inadmissible), Diane had the burden to identify to the trial court the specific portion of the exhibit that she believed to be objectionable. She did not. Therefore, the trial court did not abuse its discretion when it overruled Diane's objection. *Id.*

In her motion for new trial, Diane further objected to the admission of Petersen's affidavit because she did not have the opportunity to cross-examine Petersen. Even if we construed this claim to be on constitutional grounds,[2] this claim is subject to waiver by failure to properly raise the complaint at trial. *See, e.g.*, *In re Marriage of Tyeskie*, 558 S.W.3d 719, 726 (Tex. App.—Texarkana 2018, pet. denied) (citing *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d

---

[2]Notably, although the Emergency Orders are subject to constitutional limitations, Diane neither cites any legal authority in her motion for new trial regarding her inability to cross-examine Petersen, nor does she appeal the trial court's denial of her motion for new trial (she does not refer to the right of confrontation at all—although such a right is generally applicable only to criminal proceedings). Because Diane argues for the first time on appeal that the trial court denied her the constitutional right, grounded in due process, to confront witnesses against her, her complaint is not preserved for our review. *See Banda*, 955 S.W.2d at 272; *In re Marriage of Tyeskie*, 558 S.W.3d at 726 (citing *Tex. Dep't of Protective & Regulatory Servs.*, 46 S.W.3d at 861).

857, 861 (Tex. 2001)). Because she raised this complaint for the first time in her motion for new trial, Diane's objection regarding any lack of opportunity to cross-examination Peterson is untimely. *See Matbon, Inc. v. Gries*, 288 S.W.3d 471, 490 (Tex. App.—Eastland 2009, no pet.); TEX. R. APP. P. 33.1(a)(1)(A).

Diane did not challenge the application of the Emergency Orders or make any other admissibility arguments concerning Petersen's affidavit in the trial court. Therefore, we conclude that she waived the admissibility arguments that she now raises on appeal.

## 2. *Diane Agreed to Use Petersen's Calculations*

Before we address Diane's challenges to Petersen's methodology, we turn to the evidence that Diane and Bobby mutually agreed to use Petersen's valuation of the community interest in Bobby's 401(k) when they executed the MSA. Bobby testified that this was the parties' intent. He also stated that Petersen provided a preliminary calculation for purposes of mediation and then refined that calculation before the clarification proceeding commenced.

Diane testified that Petersen calculated the valuation reflected on the spreadsheet that was attached to both the MSA and the divorce decree, but she denies that she agreed to abide by Petersen's valuation. Rather, she asserts that she relied on the plan administrator to calculate the appropriate amount to be divided and awarded to her from the account. Diane also argues that, because the provision in the decree that concerns her award from Bobby's 401(k) account does not expressly reference Exhibit A (the spreadsheet), her award is not contingent upon Exhibit A in any respect.

The MSA was incorporated into the parties' agreed final divorce decree and is thus binding on them. *See Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017); *see also* FAM. § 6.602. The MSA recites that the parties agree to abide by the resolutions set forth in Exhibit A to the MSA, which is the same spreadsheet that is attached to

13

the divorce decree. Likewise, the decree not only incorporates the MSA "as if it were recited herein verbatim" but it orders the parties to do "all things necessary to effectuate the agreement." Finally, the award to Bobby concerning his 401(k) account as recited in the decree expressly references Exhibit A, the spreadsheet, and incorporates it "for all purposes." This provision also references Diane's award concerning Bobby's 401(k) account by excepting Diane's award amount from Bobby's award of "all [sums, increases, proceeds, and associated rights] existing as a result of [Bobby's] . . . employment, as reflected on Exhibit A."

As the factfinder, the trial court could have credited Bobby's testimony, not credited Diane's, evaluated the spreadsheet, the terms of the MSA, and the terms of the decree, and in turn concluded that Diane agreed to use Petersen's valuation when she executed the MSA and agreed to the provisions in the subsequent divorce decree.

The parties' agreement to use Petersen's calculations to valuate and divide the community interest portion of the 401(k) account supersedes any issue concerning the *accuracy* of that valuation. *See Loya*, 526 S.W.3d at 451. In *Loya*, the Texas Supreme Court resolved a dispute concerning an agreed property division in accordance with the terms of the associated MSA and declined to determine whether the disputed property was community property because the MSA governed the division of the property. *Id.* Applying that reasoning here, we conclude that, because the parties agreed to abide by Petersen's calculations regarding the value and division of the designated portion of the 401(k) account, whether Petersen's calculations captured the legally accurate "community interest portion" of the account balance is not relevant to the disposition of this appeal. *See id.* at 451–53.

Accordingly, the trial court's order clarifying the awards that each party should receive in accordance with the divorce decree—based on the community interest portion as calculated by Petersen—is supported by legally and factually

14

sufficient evidence because the parties agreed to use that valuation in their property division.

### 3. *Diane Waived Her Challenges to Petersen's Methodology*

In addition, in light of Diane's challenges to Petersen's methodology, we conclude that Petersen's affidavit sufficiently supports the trial court's order. In his affidavit, Petersen stated that he reviewed the quarterly statements for Bobby's 401(k) account from September 2011 through April 2021 (the duration of their marriage) and used the "actual index performance for each of the five investments in the 401(k) plan to determine the value [of the account] on May 17, 2021, the date of divorce." Petersen determined that the community interest portion of the account was $99,426.40 on the date of the divorce. One-half of that portion is $49,713.20, the amount that the trial court awarded Diane in its clarification order.

Diane challenges Petersen's calculations by arguing that no evidence establishes what investments the 401(k) held and that Petersen's calculations ignore the reinvestments that occurred within the plan. Bobby responds that challenges to an expert's methodology must be preserved, which Diane failed to do, in order to be considered on appeal. We agree.

When expert testimony is admitted without objection, it may be considered as probative evidence even if the basis for the opinion is unreliable. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Challenges to the reliability of the basis of an expert's opinion must be preserved by a timely and proper objection. *Id.* at 816–17. Only a challenge that is restricted to the face of the record—a challenge that expert testimony is conclusory or speculative on its face— allows a party to contest "the legal sufficiency of the evidence even in the absence of any objection to its admissibility." *Id.* at 817. An expert's testimony is only conclusory if it merely presents an unexplained conclusion or asks the factfinder to

"take my word for it" based on the expert's qualifications. *See Arkoma*, 249 S.W.3d at 389.

"An objection is required to give the proponent a fair opportunity to cure any deficit and thus prevent trial by ambush." *Pollock*, 284 S.W.3d at 817. "[W]hen a reliability challenge requires the [trial] court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Coastal Transp. Co. v. Crown Central Petrol. Corp.*, 136 S.W.3d 227, 233 (Tex. 2004).

Diane's challenges, which are raised for the first time on appeal, undoubtedly attack the reliability of Petersen's calculations—his methodology. She does not argue that Petersen's testimony is conclusory or speculative. Rather, she contends that Petersen's calculations failed to properly trace Bobby's separate property in the 401(k) account. For example, she argues that (1) Petersen's calculations fail to account for reinvestments that occurred within the plan, (2) it is unknown what investments the plan held before the marriage as compared to the investments that were held during the marriage, and (3) Petersen's tracing methodology improperly attempts to utilize a cash tracing theory rather than an item tracing theory for investment assets. Diane reasons that because Petersen's methodology is fatally flawed, the only evidence before the trial court was the account balance when the parties' marriage began and the account balance at the time of divorce. According to Diane, subtracting the earlier balance from the later balance would support the amount that Diane actually received—$390,392.18—in accordance with the plan administrator's calculations per the QDRO.

Diane's complaints require that we look beyond the face of the affidavit to evaluate Petersen's methodology to determine whether his calculations were proper. *See, e.g., Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at *6–7, *13

(Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (addressing a similar complaint that an expert's methodology in tracing separate property in a retirement account failed to account for reinvestments). Because she failed to properly object to the reliability of Petersen's calculations in the trial court, she did not preserve for appellate review her challenges to his methodology. *See Pollock*, 284 S.W.3d at 817; *Coastal Transp. Co.*, 136 S.W.3d at 233. Consequently, even if the basis is unreliable, Petersen's expert testimony constitutes probative evidence that is legally sufficient to support the trial court's clarification order. *See Hegar v. Sirius XM Radio, Inc.*, 660 S.W.3d 277, 287 (Tex. App.—Austin 2022), *rev'd on other grounds, Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402 (Tex. 2022) (citing *Pollock*, 284 S.W.3d at 818).

Finally, Diane argues that even if we hold that Petersen's calculations as shown on his spreadsheet are sufficient evidence to support the trial court's clarification order, the spreadsheet attached to the divorce decree and to the MSA awards each party $46,458.25 and leaves the balance of the account as undivided assets. She contends that neither the spreadsheet nor any other evidence in the record confirms any part of the account as Bobby's separate property, and the decree explicitly awards Bobby the funds "as reflected on" the spreadsheet. Therefore, she argues, only $92,916.50 was divided, and the balance of the account— approximately $900,000—remains undivided by the decree.

Again, this argument was not asserted in the trial court. As a result, we currently do not have jurisdiction to consider this question. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (appellate courts cannot address unassigned error in civil cases); *see also S.C. v. M.B.*, 650 S.W.3d 428, 436–52 (Tex. 2022) (discussing the mechanics and jurisdictional questions of seeking the division of property left undivided by a final divorce decree); *see also* FAM. § 9.201–.05.

We have thoroughly reviewed the entire record. In accordance with the applicable standards of review we conclude that the record contains legally and factually sufficient evidence to support the trial court's clarification and enforcement order. *See City of Keller*, 168 S.W.3d at 810; *Ortiz*, 917 S.W.3d at 772. Accordingly, we overrule Diane's first issue.

B. *The Trial Court's Award of Attorney's Fees*

In her second issue, Diane contends that the evidence is legally insufficient to support the trial court's award of attorney's fees to Bobby.[3] We agree.

An award of attorney's fees is reviewed for an abuse of discretion. *Tomsu v. Tomsu*, 381 S.W.3d 715, 719 (Tex. App.—Beaumont 2012, no pet.); *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 132 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Generally, each party must pay its own attorney's fees unless a statute or contract provides otherwise. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding). In a post-decree enforcement action, such as the one before us, the trial court may award reasonable attorney's fees. FAM. § 9.014. When fee-shifting is authorized by a statute or contract, the party seeking to recover those fees bears the burden of establishing that the fees are reasonable and necessary. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017); *Nat'l Lloyds*, 532 S.W.3d at 809.

The Texas Supreme Court in *Rohrmoos* stated that "generalities such as [attorneys' testimony about their experience, the total amount of fees, and the reasonableness of fees] are not sufficient to support a fee-shifting award under the lodestar method, which applies in fee-shifting situations." *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019). Instead, the court

---

[3]Although Diane characterizes this issue as a challenge to the legal *and* factual sufficiency of the evidence, her argument focuses only on the legal sufficiency of Bobby's evidence of reasonable and necessary attorney's fees.

stressed, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 498 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)); *see Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Sufficient evidence includes, at a minimum, proof of (1) the particular services that were performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Rohrmoos*, 578 S.W.3d at 498, 502 (citing *El Apple*, 370 S.W.3d at 762–63). The court further noted in *Rohrmoos* that although "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary . . . [they] are *strongly* encouraged." *Id.* at 502. In "all but the simplest cases," reference to some type of record or documentation will likely be necessary for an attorney to provide the necessary information to prove reasonable and necessary fees. *El Apple*, 370 S.W.3d at 763.

The entirety of the evidence offered by either party concerning a request for attorney's fees was the following testimony at the enforcement hearing by Bobby's trial counsel:

> I've been licensed to practice for eleven years in this state. I routinely practice in this court, prosecuting these type of matters, these cases and going through my file, I have ten hours, billable hours, at the rate of $250 an hour, in prosecuting this matter here for today, and, likewise, have court costs and fees in the amount of $305 and believe those to be fair and reasonable and customary fees, so ask the Court to consider the award of fees of $2500 and court cost of $305.

The above testimony, without more, is too generalized to support an attorney's fee award. *See Rohrmoos*, 578 S.W.3d at 505. As such, we conclude that the evidence is legally insufficient to support the trial court's award of attorney's fees to Bobby.

19

*See id.* at 496–98; *Jurgens v. Martin*, 631 S.W.3d 385, 418–419 (Tex. App.—Eastland 2021, no pet.); *cf. Gerges v. Gerges*, 601 S.W.3d 46, 66–67 (Tex. App.—El Paso 2020, no pet.). Accordingly, we sustain Appellant's second issue.

## IV. *This Court's Ruling*

We affirm in part and we reverse and remand in part.

We reverse the trial court's award of attorney's fees to Bobby, we vacate that portion of the trial court's order, and we remand this issue to the trial court for further consideration or a redetermination of attorney's fees. In all other respects, we affirm the trial court's order.


W. STACY TROTTER

JUSTICE


October 5, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.